## REED *v.* CIVIL SERVICE COMMISSION.

1. APPEAL AND ERROR—PLEADING—MOTION TO DISMISS.
   On appeal in nature of certiorari from order dismissing bill of complaint whereunder an injunction restraining the State civil service commission from taking certain action was sought, well-pleaded allegations in bill must be taken as true.

2. OFFICERS—CONSTRUCTION OF CIVIL SERVICE AMENDMENT.
   The civil service amendment must be considered in its entirety in determining whether its provisions have been complied with in every particular before payment for personal services can be authorized or made (Const. 1908, art. 6, § 22, as added in 1940).

3. SAME—CIVIL SERVICE AMENDMENT—ENFORCEMENT—INJUNCTION —MANDAMUS.
   Clause in civil service amendment to the Constitution providing that "violation of any of the provisions hereof may be re-

strained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the State'' applies to entire amendment and not merely the paragraph thereof in which it was placed (Const. 1908, art. 6, § 22, as added in 1940).

4. Appeal and Error—Questions Reviewable—Abandonment.

Grounds urged for dismissal of bill of complaint in trial court, which are either not urged in briefs in Supreme Court or have been expressly waived on oral argument, are not considered.

5. Courts—Jurisdiction—Review of Action of State Agency—Supreme Court—Circuit Court.

The power of the Supreme Court, granted by the Constitution, to issue original and remedial writs and to grant leave to appeal in the nature of certiorari from a void order of a State agency does not exclude the circuit court from granting equitable relief as it is also given authority by the Constitution to issue writs of mandamus, injunction, and certiorari (Const. 1908, art. 7, §§ 4, 10).

6. Mandamus—Circuit Court—State Officers.

No circuit court has jurisdiction to issue a writ of mandamus against a State officer (3 Comp. Laws 1929, § 15186).

7. Constitutional Law—Civil Service Commission—Judicial Review.

The civil service commission does not have the power to decide with finality whether its acts are in conformity with constitutional requirements as a matter of fact or of law, such question being for judicial determination in view of clause of the amendment that violation of any provision thereof might be restrained or observance compelled by injunctive or mandamus proceeding (Const. 1908, art. 6, § 22, as added in 1940).

8. Same—Civil Service Amendment—Administrative Construction.

While the construction given the civil service amendment of the Constitution by the civil service commission is entitled to serious consideration, the Supreme Court turns to the amendment itself for the law (Const. 1908, art. 6, § 22, as added in 1940).

9. Injunction—Administrative Agency—Exercise of Discretion.

Injunction is the appropriate remedy to determine whether rights have been affected by the arbitrary or unreasonable action of an administrative agency and, if the discretionary power of the agency has been abused or its judgment improperly exercised, the judiciary has the right to restrain the same.

10. SAME—CIVIL SERVICE COMMISSION.

Injunction proceedings may be brought by any citizen to restrain the civil service commission from violating any of the provisions of the civil service amendment to the Constitution (Const. 1908, art. 6, § 22, as added in 1940).

11. OFFICERS—CIVIL SERVICE COMMISSION—COMPETITIVE PERFORMANCE—DEFINITION.

Under constitutional mandate to civil service commission to classify all positions in the State civil service and determine by competitive performance exclusively on the basis of merit, efficiency, and fitness the qualifications of all candidates for positions therein, competitive performance implies something more than open competitive examination as it contemplates previous efficiency of employees in the performance of their duties (Const. 1908, art. 6, § 22, as added in 1940).

12. SAME—CONSTRUCTION OF CIVIL SERVICE AMENDMENT—PREVIOUS CONDITIONS.

In construing civil service amendment to the Constitution, it is proper to infer that the amendment was written into the fundamental law in part at least because of popular dissatisfaction with then existing conditions and that the citizens may have desired and intended to bring about a betterment in administration of State employment civil service (Const. 1908, art. 6, § 22, as added in 1940).

13. SAME—CIVIL SERVICE AMENDMENT—PREVIOUS LEGISLATION, COMMISSIONS, OFFICIAL ACTS SUPERSEDED.

The civil service amendment to the Constitution superseded all previous legislative civil service acts and wiped out previous commissions and their official acts (Const. 1908, art. 6, § 22, as added in 1940; Act No. 346, Pub. Acts 1937, as amended).

14. APPEAL AND ERROR—MOTION TO DISMISS—STATEMENTS OF FACTS—BRIEFS—ORAL ARGUMENT—RECORD.

On appeal from order denying motion to dismiss bill of complaint, statements of facts and circumstances made by counsel or by parties, either in briefs or on oral argument, are dehors the record.

15. SAME—RECORD—DE NOVO CONSIDERATION OF FACTS.

The proper way to present a record of the facts in a proceeding in chancery is by issue joined on bill and answer as the Supreme Court is not the original trier of the facts but considers them *de novo* according to the record.

16. OFFICERS—CIVIL SERVICE COMMISSION—RULES AND REGULATIONS—CONSTITUTIONAL LAW.

Rules and regulations promulgated by the civil service commission must be consistent with the other expressed powers vested

in the commission and within the limitations expressed in the civil service amendment to the Constitution (Const. 1908, art. 6, § 22, as added .in 1940).

17. Same—Positions—Persons—Candidates for Position.

Where the civil service amendment to the Constitution refers to ''positions'' it means the places in State employment filled by persons or employees; where it speaks of ''persons,'' it means the individuals or employees who fill such positions and ''candidates for positions'' means persons in or seeking positions in State employment (Const. 1908, art. 6, § 22, as added in 1940).

18. Same—Candidates for Positions—State Employees When Civil Service Amendment Became Effective.

Under civil service amendment to the Constitution requiring the civil service commission to ''determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service,'' the commission properly construed the term ''candidates for positions'' as inclusive of all persons in State employment when amendment became effective (Const. 1908, art. 6, § 22, as added in 1940).

19. Same—Action of Previous Agencies—Qualifications.

Under civil service amendment to the Constitution requiring the civil service commission to ''determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service,'' no person had a right to be ''blanketed in'' State civil service on the basis of any action taken by any previous State agency or statute except as such action complies with the amendment itself as the standard therein set up is the only yardstick for measuring qualifications (Const. 1908, art. 6, § 22, as added in 1940; Act No. 346, Pub. Acts 1937, as amended).

20. Same—Measurement of Qualifications of Persons Continuing in Service.

Under civil service amendment to the Constitution requiring the civil service commission to ''determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service,'' there should be no discrimination between persons in State employment when amendment became effective except solely on the basis of merit, efficiency and fitness, and qualifications of all continuing in such service must be measured by same yardstick (Const. 1908, art. 6, § 22, as added in 1940).

21. MANDAMUS—SUPREME COURT—STATE CIVIL SERVICE COMMISSION.
    Remedy of State employees who first became subject to civil
    service upon effective date of civil service amendment to Con-
    stitution to compel civil service commission to grant them
    permanent civil service status is by mandamus of which
    Supreme Court has original, sole jurisdiction (Const. 1908,
    art. 6, § 22, as added in 1940; 3 Comp. Laws 1929, § 15186).

22. INJUNCTION—PERMANENT CIVIL SERVICE STATUS.
    State employees who first became subject to civil service upon
    effective date of civil service amendment to Constitution and
    who were permitted by civil service commission to continue in
    the State civil service pending establishment of permanent
    status through open competitive examinations, while other
    employees who had passed qualifying or competitive examina-
    tions given by previous civil service agencies were given
    permanent civil service recognition by the commission, were
    not entitled to injunctive relief against the commission based
    upon rules under which such action was taken since plaintiffs
    were not entitled to permanent civil service status (Const.
    1908, art. 6, § 22, as added in 1940).

23. APPEAL AND ERROR—REMAND—INJUNCTION—MANDAMUS.
    On appeal in suit by State employees to enjoin State civil service
    commission from requiring plaintiffs to take certain civil
    service examinations, where plaintiffs are not entitled to such
    relief and their only remedy, if any, is by way of mandamus
    in Supreme Court, case is ordered remanded to circuit court
    with directions to dismiss bill of complaint (3 Comp. Laws
    1929, § 15186).

24. COSTS—PUBLIC QUESTION—CIVIL SERVICE AMENDMENT.
    No costs are allowed in suit involving construction of civil serv-
    ice amendment of the Constitution, a public question being
    involved (Const. 1908, art. 6, § 22, as added in 1940).

    CHANDLER, C. J., and BUSHNELL, J., dissenting in part.

Appeal from Wayne; Ferguson (Homer), J.
Submitted January 15, 1942. (Docket No. 85,
Calendar No. 41,880.) Decided March 17, 1942.

Bill by Wayne Reed and others against Civil
Service Commission of the State of Michigan,

George J. Burke, Chairman, Alex J. Groesbeck, William Palmer, and John C. Beukema, members of said commission, and Thomas J. Wilson, State Personnel Director, to declare null and void certain rules, to enjoin the discharge of certain State employees, and for other relief. Defendants review denial of their motion to dismiss by appeal in the nature of certiorari. Bill dismissed.

*Voorhies, Long, Ryan & McNair* (*R. Gerveys Grylls* and *Wm. John Spicer,* of counsel), for plaintiffs.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Robert H. Dunn* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

*George Meader* (*James A. Kennedy,* of counsel), for Michigan Merit System Association, *amicus curiae.*

BOYLES, J. Plaintiffs herein have filed a bill of complaint in the circuit court for Wayne county, in chancery, on behalf of themselves and approximately 2,700 other State employees, to test the validity of certain rules adopted by the State civil service commission. Defendants' motion to dismiss the bill of complaint on certain designated grounds was denied by the circuit court, and this is an appeal in the nature of certiorari from the order denying the motion. Under these circumstances, well-pleaded allegations in the bill of complaint must be taken as true.

The bill of complaint alleges that the plaintiffs are citizens of this State, residents of Wayne county, employees of the State at the present time

as well as prior to January 1, 1941, and that plaintiffs represent 2,785 other State employees in a similar status who have a common interest with plaintiffs; that the defendant civil service commission is a duly constituted body provided for by an amendment to the State Constitution, and that the individual defendants are members of, or the personnel director of, said commission. The bill alleges that plaintiffs and the employees they represent were given civil service status by virtue of their being in State employment on January 1, 1941, under the express terms of the civil service amendment; that the commission has violated the provisions of the amendment, exceeded the powers therein conferred upon it, and discriminated against the plaintiffs and others in a similar situation by promulgating rules 2 B and 2 C; that in pursuance of rule 2 C an attempt is being made to compel plaintiffs and those whom they represent to pass competitive examinations in order to attain the same permanent civil service status accorded approximately 14,000 other State employees under rule 2 B, and thus unreasonably and arbitrarily to divide State employees into differing civil service status to the unjust detriment of plaintiffs' employment. The bill alleges that a great majority of State employees were given permanent civil service status under rule 2 B by virtue of "qualifying examinations" under previous legislative and commission acts, while plaintiffs and those they represent are compelled by rule 2 C to take open competitive examinations with all candidates for State employment who were not State employees on January 1, 1941. Plaintiffs allege that under this system they will be required to pass these competitive examinations among the three highest in order to

attain a civil service status comparable to the permanent status granted by the commission to approximately 14,000 other State employees by virtue of rule 2 B. The bill alleges there is no reasonable justification for the commission's attempted classification of State employees in that manner, that this discrimination is contrary to the mandate of the amendment and a violation of its provisions. The bill further charges that this method of classification violates the amendment wherein it provides that no removals from or demotions in the State civil service shall be made for partisan, racial, or religious considerations, that it is a political subterfuge to blanket into civil service a large number of State employees for political considerations and, for a similar reason, to militate against plaintiffs' employment. Plaintiffs ask that the defendants be enjoined from taking any action based upon such a civil service examination as required by rule 2 C, and from disturbing the status of plaintiffs as State employees.

A temporary injunction was granted by the court below restraining the commission from requiring any examination of plaintiffs or the members of the class represented by them, and from discharging the plaintiffs or preventing them from receiving compensation as State employees pending further order of the court. Leave to appeal from an order denying the motion to dismiss the bill of complaint was granted by this court and the injunction was modified by this court to the extent of allowing the commission to continue to hold examinations and classify employees, but restraining the commission from discharging plaintiffs or the individuals included in the class represented by them until further order.

The amendment under consideration (Constitution of 1908, art. 6, § 22, effective January 1, 1941) is as follows:

"The State civil service shall consist of all positions in the State service except those filled by popular election, heads of departments, members of boards and commissions, employees of courts of record, of the legislature, of the higher educational institutions recognized by the State Constitution, all persons in the military and naval forces of the State, and not to exceed two other exempt positions for each elected administrative officer, and each department, board and commission.

"There is hereby created a nonsalaried civil service commission to consist of four persons, not more than two of whom shall be members of the same political party, appointed by the governor for eight-year, overlapping terms, the four original appointments to be for two, four, six and eight years respectively. This commission shall supersede all existing State personnel agencies and succeed to their appropriations, records, supplies, equipment, and other property.

"The commission shall classify all positions in the State civil service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the State civil service. No person shall be appointed to or promoted in the State civil service who has not been certified as so qualified for such appointment or promotion by the commission. No removals from

or demotions in the State civil service shall be made for partisan, racial, or religious considerations.

"The administration of the commission's powers shall be vested in a State personnel director who shall be a member of the State civil service and who shall be responsible to and selected by the commission after open competitive examination.

"To enable the commission to execute these powers, the legislature shall appropriate for the six months' period ending June 30, 1941, a sum not less than one-half of one per cent., and for each and every subsequent fiscal year, a sum not less than one per cent., of the aggregate annual payroll of the State service for the preceding fiscal year as certified to by the commission.

"After August 1, 1941, no payment for personal services shall be made or authorized until the provisions of this amendment have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the State.

"This amendment shall take effect on the first day of January following the approval thereof."

Some time after its appointment and after assuming the duties of office, the civil service commission adopted rule 2 purporting to classify all employees of the State (except those exempted by the amendment) who held employment on January 1, 1941, when the amendment went into effect, and to define their status in State civil service. This rule is as follows:

## "2.  Positions in State Civil Service on January 1, 1941.

"A.  Definition.  Persons holding positions in the State civil service on January 1, 1941, are those who on that date or on the day following were on the State payroll as regular employees receiving

pay therefor, including those on leave of absence and those engaged in intermittent or seasonal work.

"B. PERSONS GRANTED PERMANENT STATUS. Every person who on January 1, 1941, was legally occupying either a classified or unclassified position placed in the State civil service by the amendment to the Constitution, and who had theretofore taken either a qualifying or competitive examination conducted by the State civil service commission, and obtained a passing grade therein and had acquired status in that position, or who had been included in such service under the merit system maintained by the Michigan unemployment compensation commission, the Michigan State police, or the State conservation department, shall be entitled to continue to occupy such position without further examination or certification for such employment and shall become subject to the provisions of these rules.

"C. PERSONS GRANTED TEMPORARY STATUS. Every other person who on January 1, 1941, was legally occupying a position placed in the civil service by the amendment to the Constitution shall hold his position pending examination and certification to fill the position so occupied, and shall be removed therefrom only in accordance with the provisions applicable to permanent employees. All such employees shall be entitled to the same rights and privileges accorded permanent employees, pending establishment of status through open competitive examination."

The gist of plaintiffs' claim is that they are unreasonably discriminated against by rules 2 B and 2 C; that rule 2 B "blankets in" approximately 14,000 State employees as of January 1, 1941, without further action, while rule 2 C discriminates against approximately 2,700 others, including plaintiffs and those they represent, who likewise held positions in State employment on January 1, 1941,

by requiring them to take open competitive examinations with all prospective candidates for State employment who did not hold any position in State employment on that date; and plaintiffs allege that the 2,700 State employees thus discriminated against would have to take the chance of their selection from among the three highest candidates who were given a passing grade in order to obtain the same permanent status in employment allowed the 14,000 other employees by rule 2 B; in effect, that rules 2 B and 2 C do not comply with the present constitutional requirement that the commission shall "determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service."

Two questions essential for decision of the issues raised by appellants may be summarized as follows:

1. Is injunction the proper remedy?

2. Does the bill of complaint set up sufficient grounds for relief in a court of equity?

1. The answer to the first question depends on the construction to be given that paragraph of the amendment which reads as follows:

"After August 1, 1941, no payment for personal services shall be made or authorized until the provisions of this amendment have been complied with in every particular. Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the State."

This paragraph declares that violation *of any of the provisions hereof* may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the State. De-

fendants claim this does not apply to the entire amendment but that it applies only to the paragraph in which this provision occurs. The only other provision in this paragraph is that after August 1, 1941, no payment for personal services shall be made or authorized *until the provisions of this amendment* have been complied with in every particular. Defendants' position is that injunctive or mandamus proceedings can be brought by any citizen *only* to prevent payment for personal services after August 1, 1941. We do not concur in such a limited construction. Examination of the language itself readily discloses the intent. The first sentence of the concluding paragraph is an express inhibition against either authorizing or paying any employee "until the provisions of *this amendment*" have been complied with in every particular. The amendment must be considered in its entirety in determining whether *its provisions have been complied with in every particular* before payment for personal services can be authorized or made. "Violation of *any* of the provisions hereof" does not refer solely to the inhibition against authorizing or paying for personal services. If such a limited construction were intended, the sentence would read "violation of the *foregoing provision*," instead of "violation of *any* of the *provisions* hereof."

In the court below, defendants moved to dismiss the bill of complaint on the grounds (among others) that the circuit court for Ingham county had sole jurisdiction to the exclusion of the circuit court in chancery in Wayne county; also that plaintiffs were barred from relief by reason of laches. These grounds are not urged in the briefs now before us, or have been expressly waived on oral argument, and therefore are not considered. Defendants, however, do contend here that plaintiffs may not re-

sort to a court of equity for relief; that plaintiffs should submit to such tests as may be required of them by the commission, await an adverse ruling of the commission, and then, if they conceive themselves aggrieved, apply to this court for leave to appeal in the nature of certiorari. The Constitution of Michigan (1908), art. 7, § 4, gives this court the power to issue original and remedial writs and to grant leave to appeal in the nature of certiorari from a void order of a State agency. This does not necessarily exclude the jurisdiction of the circuit court in chancery if a bill of complaint sets up grounds for equitable relief. Our authority is not exclusive; circuit courts are given similar authority by the Constitution of 1908 (art. 7, § 10) to issue writs of mandamus, injunction and certiorari.

The attorney general on behalf of defendants contends that the present suit is in effect a mandamus proceeding against State officers, namely, the civil service commission, to compel observance of certain provisions in the amendment and therefore the circuit court does not have jurisdiction. We do not overlook the fact that by statute (3 Comp. Laws 1929, § 15186 [Stat. Ann. § 27.2230]) it is provided that no circuit court shall have jurisdiction to issue a writ of mandamus against any State officer. *Thompson* v. *Auditor General*, 261 Mich. 624; *Chemical Bank & Trust Co.* v. *County of Oakland*, 264 Mich. 673. If the relief sought by plaintiffs were limited to compelling the commission to blanket them in to State civil service, such relief could not be afforded in the instant proceeding. However, the issue before us is whether the commission shall be enjoined from enforcing rule 2 C. The bill of complaint is for injunctive relief. Counsel for defendants have joined in asking this court to decide the fundamental issues involved "since all interested parties are now before it."

Counsel for the commission concede that controversies arising over the civil service are subject to judicial review on questions of law, but claim that such review cannot extend to issues of fact. This would mean that the commission is a fact-finding body whose findings of fact are conclusive and not subject to judicial review. Judicial review limited solely to certiorari proceedings would deny jurisdiction of the courts to restrain violation or compel observance of the provisions of the amendment as to issues of fact, by injunctive or mandamus proceedings, notwithstanding the provision in the amendment to that effect. A complete answer to such argument is found in the concluding sentence of the amendment which expressly provides that a violation of *any* of the provisions thereof may be restrained or observance compelled by injunctive or mandamus proceedings. It does not lie within the power of the commission to decide with finality whether its acts are in conformity with constitutional requirements as a matter of fact or of law. That is a question for judicial determination. The construction given the amendment by the commission is entitled to serious consideration. *Boyer-Campbell Co.* v. *Fry,* 271 Mich. 282 (98 A. L. R. 827). However, we turn to the amendment for the law. *Rudolph Wurlitzer Co.* v. *State Board of Tax Administration,* 281 Mich. 558, 561; *Acorn Iron Works* v. *State Board of Tax Administration,* 295 Mich. 143 (139 A. L. R. 368). Counsel for the association that sponsored the amendment, in a well-considered brief, concedes that injunctive proceedings may be brought by any citizen to restrain the commission from violating any of the provisions of the amendment:

"Under the amendment the only right given to citizens is to restrain violations or compel observance of the provisions of the amendment. Assume

for the purpose of the argument, that the commission violated the amendment in granting civil service status to those employees who had civil service status under previously existing civil service legislation. If this were a violation of the amendment, it obviously could be restrained by any citizen through injunctive proceedings."

Injunction is the appropriate remedy to determine whether rights have been affected by the arbitrary or unreasonable action of an administrative agency. If the discretionary power of an administrative agency is abused or its judgment improperly exercised, the judiciary has the right to restrain the same. *Upjohn* v. *Richland Township Board of Health*, 46 Mich. 542 (41 Am. Rep. 178) ; *Wetherby* v. *City of Jackson*, 264 Mich. 146.

2. Does the bill of complaint set up sufficient grounds for relief in equity?

We have heretofore summarized the allegations in the bill of complaint. The relief sought by plaintiffs is to enjoin the commission from enforcing rules 2 B and 2 C on the ground of unreasonable discrimination against plaintiffs. The substance of the complaint is that all State employees who were on the payroll January 1, 1941, should be considered in the same category as respects their future status under the amendment; that the discrimination between plaintiffs and other employees under rules 2 B and 2 C violates the amendment itself because the amendment requires the commission to determine by competitive performance *exclusively* on the basis of merit, efficiency and fitness the qualifications of *all* candidates for positions in the State civil service.

On January 1, 1941, when the amendment went into effect, approximately 17,000 persons, besides those exempt from its provisions, were in State em-

ployment. Of this number approximately 14,000 were given permanent civil service recognition by the commission, namely, those who had taken either a qualifying or a competitive examination and had been given classified status by the civil service commissions under previous acts. Approximately 2,700 other employees were permitted to continue in State employment only pending examination and establishment of permanent status through open competitive examinations. Under this rule, in order to acquire the same permanent civil service status accorded the 14,000 employees who came within rule 2 B, plaintiffs are required to take open competitive examinations along with all *candidates* for State employment who were not in State service on January 1, 1941. Plaintiffs' retention in State service thereafter will depend upon being selected by the appointing or employing heads of departments, et cetera, from among the three highest candidates in their respective classes. The basis for this distinction—the dividing line between the 14,000 employees under rule 2 B and the 2,700 employees under rule 2 C—is that the former had been given a civil service rating by the previous commissions under previous legislative acts, while the latter held positions in State employment without such ratings.

Therefore the issue before us is, whether this action of the civil service commission under and in pursuance of rules 2 B and 2 C complies with the mandate of the amendment directing the commission to "determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service." More specifically, does the certification of the former civil service commissions under the then legislative acts conform to this requirement; because the present commission, by

adopting the action of former commissions, in effect decides that the acts of former commissions as to approximately 14,000 employees are a compliance with the requirement of the amendment. By virtue of the adoption of rule 2 B, the commission decides that all State employees on January 1, 1941, who had taken and passed either a qualifying or a competitive examination conducted by the previous commissions are *ipso facto* entitled to permanent civil service status under the amendment.

The amendment itself is the guide to which we must look for the answer. It requires the commission to ''classify all positions * * * fix rates of compensation * * * approve or disapprove disbursements * * * determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service.'' ''Competitive performance'' implies something more than ''open competitive examination''—it contemplates previous efficiency of employees in the performance of their duties.

The adoption of the amendment by the electorate may indicate that the previous civil service statutes and the administration thereof were not satisfactory. Counsel refer to the controversy regarding the merits and the deficiencies of the system as administered before the amendment was adopted. We must conclude that the civil service amendment was written into the fundamental law in part at least because of popular dissatisfaction with then existing conditions. It is a proper inference that the citizens of Michigan may have desired and intended to bring about a betterment in administration of State employment civil service.

In view of the fact that the present commission by rule 2 B seeks to adopt the acts of the previous com-

missions as determinative of the efficiency and fit-
ness of certain persons in State service, considera-
tion of such previous acts and previous laws is
necessarily involved. Under Act No. 346, § 7, Pub.
Acts 1937, "heads of all divisions" were exempt
from its provisions. A controversy arose over giving
employees a preferred exemption by creating many
heads of divisions. There were other exemptions
not now recognized by the amendment; for example,
assistants attorney general (*DeMaggio* v. *Attorney
General*, 300 Mich. 251). Many employees were
placed in the classified service under that act by
taking "qualifying" examinations. The statute did
not set up any definite yardstick for determining the
qualifications of State employees under the so-called
qualifying tests. The 1937 act required that *va-
cancies* in classified service be filled from an "eligi-
ble register" list. The standard for qualifying on,
the eligible register list was not the same as that
now set up by the amendment. Controversies arose
as to what should be considered proper "qualify-
ing" tests, and as to what standards should be used
for certification on the eligible register lists. In
1939, the legislature, by amendment (Act No. 97,
Pub. Acts 1939), discarded the results of such quali-
fying tests, but increased the number of exempt
positions. Filling of vacancies continued to be pro-
vided for from eligible register lists prepared under
the same indefinite yardstick set up by the former
act. The public controversy, and claims of political
jockeying under these acts, no doubt caused the
adoption of the present amendment whereby it was
expected to profit by earlier mistakes.

This amendment, for the first time, sets up a
definite standard for determining qualifications for
State employment. No express provision is made
whereby the present commission succeeds to the

powers and duties of former commissions. The present commission started with a clean slate. The amendment itself is a definite mandate that the qualifications of all persons in State civil service shall be determined by competitive performance exclusively on the basis of merit, efficiency and fitness. There is an inhibition against removals from or demotions in the State civil service for partisan, racial, or religious considerations. The new commission had to look only to the amendment itself for its powers, duties and limitations. All previous legislative acts were superseded. Previous commissions and their official acts were wiped out.

The promulgation of rules 2 A, 2 B, and 2 C by the commission may well be considered as having been necessary, or even indispensable, at the beginning, for use pending sufficient time and opportunity for more detailed action to effectuate the intent of the amendment. The commission is not to be criticized for adopting means at the outset which might or might not ultimately prove to be of value and subject to later change in the light of further experience after opportunity for more deliberate consideration. In a statement filed with the court, the commission frankly invites any suggestion for more effective means of carrying out the intent of the amendment, and counsel for the commission recognize the possible necessity for changes in early rules, thus:

"We respectfully submit the civil service commission is not bound by any rule of construction which might tie its members to the very first opinions they expressed—concerning the meaning of the amendment—within a few days after the new amendment became effective. * * * If this court should hold that *all* State employees were required to take a civil service examination, the commission would at once

adopt that construction, and arrangements would be made to hold such examinations for the 16,000 or more positions now filled; and this would, of course, include the plaintiffs."

On the record before us, consideration must be limited to well-pleaded allegations in the bill of complaint, which must be taken as true. Statements of facts and circumstances made by counsel or by parties, either in briefs or on oral argument, are dehors the record. They have no place in the consideration of an order denying a motion to dismiss the bill of complaint before answer is filed. While we have been aided by the helpful briefs and statements filed by counsel, by the commission, by counsel for the association that sponsored the amendment, and on oral argument, it has been difficult to disassociate many statements therein from a consideration of the issues properly before us on appeal from denial of a motion to dismiss. The record does not give us the facts regarding the earlier examinations and acts of former commissions and we cannot now determine with finality whether State employees selected thereunder should be considered by the present commission as qualified for permanent positions in the State civil service exclusively on the basis of merit, efficiency and fitness. It may be true that the qualifying and competitive examinations under previous laws either would or would not comply with the requirement of the amendment. If, as claimed by some, the 1937 and 1939 civil service acts, and the action of the commissions thereunder, were motivated by political considerations, no such taint must attach to the result accomplished by the present commission under the amendment. We need not point out that the proper way to present a record of the facts in a proceeding in chancery is by issue

joined on bill and answer. This court is not the original trier of the facts. We consider the facts *de novo* according to the record.

In a case of this nature involving the administration of State affairs, we feel justified in expressing opinions which might be considered dicta, when requested to do so by all parties to the proceeding as in the matter now before us. The commission and the attorney general have joined with plaintiffs in asking this court for a comprehensive decision of the questions involved.

Counsel for defendants urge that the commission could promulgate rules 2 A, 2 B, and 2 C by virtue of its rule-making power granted by the amendment to "make rules and regulations covering all personnel transactions." The power of the commission to make rules and regulations is not in dispute. However, rules and regulations must be consistent with the other expressed powers vested in the commission and within the limitations expressed in the amendment itself. If rules and regulations are contrary to any provision of the amendment, they cannot stand merely by virtue of the authority conferred upon the commission to make rules and regulations.

Counsel for appellants claim a distinction is made between "persons" and "positions" in the wording of the amendment. These terms were used advisedly in the amendment and have a plain meaning. Where the amendment refers to "positions," it means the places in State employment filled by persons or employees. Where the amendment speaks of "persons," it means the individuals or employees who fill such positions. "Employees" and "persons" are to some extent used synonymously, but not in the same meaning as "positions." The amendment puts certain "positions" in State civil service, but

not certain "persons." "Candidates for positions" obviously means persons in or seeking positions in State employment. The construction given "candidates for positions" by the commission, namely, as inclusive of those who were already in State employment on January 1, 1941, was reasonable and proper. At that time there were approximately 17,000 persons in positions of State employment. Of necessity, the commission was compelled to consider them as holding positions in State civil service as of that date. This was the only construction consistent with continuity in State governmental affairs.

Neither the plaintiffs nor the individuals in the class represented by them, nor any other person, has any right to be "blanketed in" State civil service on the basis of any action taken by any previous State agency or any previous civil service statute except that such action complies with the amendment itself. However, the standard set up by the amendment is the only yardstick for measuring qualifications. There should be no discrimination between persons in State employment on January 1, 1941, except solely on the basis of merit, efficiency and fitness. On that date, all State employees (except those exempted) held positions in State civil service. Their fitness and qualifications for continuing in such service must all be measured by the same yardstick. Many employees now given permanent civil service status under rule 2 B were merely given "qualifying" examinations by the previous commissions and plaintiffs claim the right to have their own fitness for permanent civil service status measured by the same yardstick and not by open competition with all candidates not previously in State service. Whether the former "qualifying" examinations satisfy the present requirements on the basis of merit, efficiency and fitness does not appear from

the record before us. If they do, plaintiffs as well as those given permanent status under rule 2 B on that basis are all entitled to the same permanent status on the same basis; otherwise not.

Our conclusion is that plaintiffs are not now entitled to classification as having permanent civil service status, and plaintiffs can acquire that status only upon the civil service commission's determination "by competitive performance exclusively on the basis of merit, efficiency and fitness." Plaintiffs' remedy to compel the commission to grant them permanent civil service status on that basis lies in a mandamus proceeding, of which this court has original, sole jurisdiction. No effective relief could be afforded plaintiffs by any decree entered in the circuit court if this case were remanded for hearing on the issues of fact. It clearly follows under the law of this case that plaintiffs are not entitled to any injunctive relief sought within the prayer of their bill of complaint. Nothing could be accomplished for plaintiffs by remanding the case to the trial court. On this appeal, dismissal of plaintiffs' suit should be ordered. Issues of fact, if any, as to whether the basis adopted by the civil service commission under rules 2 B and 2 C comply with the mandate of the amendment may be determined by joining issue and a reference, if necessary, in a mandamus proceeding.

While seemingly unnecessary to decision herein, the following may be noted. In so far as plaintiffs allege in their bill of complaint that the civil service commission has heretofore unlawfully "blanketed in" or classified as having permanent civil service status some 14,000 other State employees who are not parties to this suit, plaintiffs are not entitled to any injunctive relief. If, on this phase of the case, any relief were to be granted to plaintiffs, such re-

lief would be by mandamus. But the circuit court is without jurisdiction in such mandamus proceedings. Defendants are State officers and the statute (3 Comp. Laws 1929, § 15186 [Stat. Ann. § 27.2230]) provides:

"No circuit court shall have jurisdiction to issue a writ of mandamus against any State officer."

The case is remanded to the circuit court with direction to enter a decree dismissing plaintiffs' bill of complaint. No costs are allowed, a public question being involved.

NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred with BOYLES, J.

CHANDLER, C. J. (*concurring*). I concur in the result arrived at by Mr. Justice BOYLES, but I am not in accord with his interpretation of the constitutional provision under consideration here.

After a careful review of the record and the able briefs filed by counsel for the parties litigant, I find my views so much more clearly set forth in appellants' brief than I can express them that I quote with approval the following therefrom:

"The amendment creating a constitutional body to supersede all existing personnel agencies, vests in the civil service commission an exclusive authority and plenary power to classify all positions in the State service, fix rates of compensation therefor, approve or disapprove disbursements, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for such positions, and 'make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the State civil service' (Const. 1908, art. 6, § 22, as added in 1940).

"Implicit in the plain language thus employed may be found authority in the commission to resolve all controversies arising over the civil service of this State, subject, we think, to appropriate judicial review on questions of law, though never issues of fact.

"It is true the penultimate paragraph of the amendment provides:

" 'After August 1, 1941, no payment for personal services shall be made or authorized until the provisions of this amendment have been complied with in every particular. *Violation of any of the provisions hereof may be restrained or observance compelled by injunctive or mandamus proceedings brought by any citizen of the State.'*

"The italicized sentence was construed by the lower court to refer to all of the provisions of the amendment, thus expressly granting to any aggrieved person the privilege of the remedies prescribed.

"Such a construction would, we surmise, throw upon our circuit courts the burden of settling every conceivable dispute between the civil service commission, or its director, and any State employee who might consider that he had suffered a wrong by virtue of some administrative order, rule or regulation, and it would hinder, retard, or disrupt the orderly functioning of the State civil service, by subjecting the commission to numerous injunction suits in courts scattered widely throughout the State.

"The more reasonable interpretation would be that the language in question was intended to operate solely within the framework of the paragraph in which it is found, thus affording to 'any citizen of the State' a judicial remedy to compel or restrain, as the case may be, the performance or violation of the provisions of that paragraph which required that the provisions of the amendment be complied with in every particular on or before the first day of August, 1941. If they were not complied with by that date,

then we assume it was the right of 'any citizen of the State,' to compel such action by mandamus from this court; if they were not complied with in time, 'any citizen of the State' might upon proper showing obtain an injunction to restrain State officials from making or authorizing 'payment for personal services' until the amendment should be implemented 'in every particular.'

"The alternative construction would, we submit, result in a diffusion of authority not contemplated by the people.

"Moreover, it would, we think, be absolutely unfair to the members of this commission to deprive them of their constitutional privilege of inquiring into and investigating all grievances of those who occupy positions under their exclusive jurisdiction. * * * Nor should courts of equity be compelled to act as superboards of review of examinations conducted by the commission. This was never the intention of the people in adopting the constitutional amendment."

Unquestionably the civil service commission is a constitutional body possessing plenary power. In its acts it is not subject to control or regulation by either the executive, legislative or judicial branch of our State government. However, the Supreme Court of this State in the exertion of its constitutional power to issue writs of certiorari, has original and exclusive jurisdiction to determine whether the commission has violated the constitutional provision creating it and defining its powers and duties.

BUSHNELL, J., concurred with CHANDLER, C. J. WIEST, J., did not sit.