## THE LAMPHERE SCHOOLS v LAMPHERE FEDERATION OF TEACHERS

1. LABOR RELATIONS—PUBLIC EMPLOYERS—CIVIL DAMAGE ACTION—STRIKES—STATUTES.

A public employer may not maintain a civil damage action against the union representing its public employees where the union has caused a strike in violation of statutory prohibition; such suits are inconsistent with the provisions of the public employment relations act which gives to the Employment Relations Commission and not to the courts the primary responsibility to balance the competing equities when unfair labor practices or other misconduct have been committed by both sides (MCLA 423.201 *et seq.;* MSA 17.455[1] *et seq.)*

2. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—STRIKES—DISCRETIONARY DISCIPLINE—SOLE REMEDY—INJUNCTION.

The discretionary right of an employer to discipline or dismiss a striking employee was intended by the Legislature to be the exclusive legal remedy in cases where the public employment relations act has been violated, but this statutory remedy does not limit the availability of the equitable remedy of injunctive relief to stop a strike, when appropriate (MCLA 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

3. SCHOOLS AND SCHOOL DISTRICTS—TEACHERS—STRIKES—PUBLIC EMPLOYMENT RELATIONS ACT—REINSTATEMENT—EMPLOYMENT RELATIONS COMMISSION.

A teacher who is found at a statutory hearing to have violated the provisions of the public employment relations act by striking should nevertheless be reinstated if the Employment Relations Commission determines that reinstatement will best effectuate the policies of the act (MCLA 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

4. LABOR RELATIONS—PUBLIC EMPLOYMENT RELATIONS ACT—LEGISLATIVE INTENT—EQUAL BARGAINING POWER—CIVIL DAMAGE SUITS—PUNITIVE SANCTIONS.

The legislative intent behind the public employment relations act

REFERENCE FOR POINTS IN HEADNOTES
[1–5] 48 Am Jur 2d, Labor and Labor Relations §§ 1191, 1196, 1197, 1407.

is to equalize bargaining power between public employers and public employees and to provide penalties only in cases where a party has bargained in bad faith; an action for civil damages by a public employer against an employee union which caused an illegal strike would provide a judicially created punitive sanction against the employee not intended by the Legislature and is, therefore, not maintainable (MCLA 423.201 *et seq.;* MSA 17.455[1] *et seq.).*

5. LABOR RELATIONS—PUBLIC EMPLOYEE STRIKES—ESSENTIAL SERVICES —SCHOOLS AND SCHOOL DISTRICTS—LOSS OF REVENUE.

The fundamental purpose of prohibiting public employee strikes is to insure that the public business is not interrupted and that essential services are not suspended, not to protect public schools from any loss of revenue occasioned by past teacher strikes.

Appeal from Oakland, James S. Thorburn, J. Submitted December 9, 1975, at Lansing. (Docket No. 23275.) Decided February 10, 1976. Leave to appeal granted, 396 Mich 871.

Complaint by The Lamphere Schools against the Lamphere Federation of Teachers, Allen Coulter, the Michigan Federation of Teachers and Arsh Derbabian seeking damages arising from a teachers' strike. Judgment for defendants. Plaintiff appeals. Affirmed.

*Clark, Hardy, Lewis & Fine, P. C.* (by *Dennis R. Pollard),* for plaintiff.

*Fieger, Golden & Cousens,* for defendants.

Before: McGREGOR, P. J., and T. M. BURNS and N. J. KAUFMAN, JJ.

McGREGOR, P. J. Plaintiff brought suit on December 4, 1974, against defendants Lamphere Federation of Teachers, the collective bargaining representative of the teachers employed by the plaintiff in 1973, Allen Coulter, the president of the

Lamphere Federation of Teachers, the Michigan Federation of Teachers, and Arsh Derbabian, an agent and representative of the Michigan Federation of Teachers, to recover damages caused to the plaintiff by a teachers' strike in September and October, 1973.

The plaintiff's complaint alleged that the conduct of the defendants caused substantial damages to the plaintiff school district. Count 1 of the complaint alleged that the defendants' actions breached the duty not to strike imposed on them by § 2[1] of the public employment relations act (PERA), MCLA 423.201 *et seq.;* MSA 17.455(1) *et seq.* Count 2 of the complaint alleged that the conduct of the defendants in recommending and subsequently calling the strike was a tortious interference with existing individual contractual relationships between the plaintiff school district and its teachers. Count 3 consisted of a claim of recovery for civil conspiracy against the defendants for planning and implementing the strike in violation of the statute.

On January 25, 1975, the defendants filed a motion for summary judgment, pursuant to GCR 1963, 117.2(1), alleging that the complaint failed to state a cause of action. This motion was granted and an order of dismissal was subsequently entered on February 14, 1975. Plaintiff appeals as a matter of right.

The issue before us is whether a public employer can maintain a civil damage action against the union representing its public employees, where the

---

[1] "No person holding a position by appointment or employment in the government of the state of Michigan, or in the government of any 1 or more of the political subdivisions thereof, or in the public school service, or in any public or special district, or in the service of any authority, commission, or board, or in any other branch of the public service, hereinafter called a 'public employee,' shall strike."

union has caused a strike in violation of the statutory prohibition. For the following reasons, we hold that it cannot, and accordingly affirm the trial court's grant of summary judgment.

I.

Plaintiff's present action, which seeks damages based solely on the fact that the employees represented by the defendants went on strike, would, in our view, establish a cause of action that is inconsistent with the provisions of the PERA.

In 1965, Michigan public employees were granted extensive collective bargaining rights by the PERA which was drafted on the model of the National Labor Relations Act.[2] However, the PERA departed from the NLRA model by retaining the strike prohibition which had existed prior to its enactment. In order to enforce the strike prohibition, the Legislature adopted only one remedial sanction: the employer's discretionary right, under § 6,[3] to discipline or dismiss a striking

___

[2] 61 Stat 136 (1947) *et seq.,* 29 USC 151 *et seq.*

[3] "Sec. 6. Notwithstanding the provisions of any other law, any person holding such a position who, by concerted action with others, and without the lawful approval of his superior, wilfully absents himself from his position, or abstains in whole or in part from the full, faithful and proper performance of his duties for the purpose of inducing, influencing or coercing a change in the conditions or compensation, or the rights, privileges or obligations of employment shall be deemed to be on strike but the person, upon request, shall be entitled to a determination as to whether he did violate the provisions of this act. The request shall be filed in writing, with the officer or body having power to remove or discipline such employee, within 10 days after regular compensation of such employee has ceased or other discipline has been imposed. In the event of such request the officer or body shall within 10 days commence a proceeding for the determination of whether the provisions of this act have been violated by the public employee, in accordance with the law and regulations appropriate to a proceeding to remove the public employee. The proceedings shall be undertaken without unnecessary delay. The decision of the proceeding shall be made within 10 days. If the employee involved is held to have violated this law and his employment terminated or

employee. However, the possible impact of even this sanction is considerably lessened by the procedural safeguards afforded to the employee by § 6 as well as the employee's right to petition the Michigan Employment Relations Commission (MERC) for reinstatement under § 16 of the act.

Thus, before public employees can be fired or otherwise disciplined under § 6 of the PERA for engaging in concerted strike action, the employees are first entitled to a hearing, the sole purpose of which is to determine whether the employer has correctly identified the particular employee as a violator of the act's prohibition against striking. See *Rockwell v Crestwood School District,* 393 Mich 616, 640; 227 NW2d 736 (1975). Additionally, even where it has been correctly determined that a public employee has illegally engaged in a strike, the employee may be ordered reinstated by the MERC. In *Rockwell, supra,* the Supreme Court said:

"Even if it should be determined in § 6 hearings that particular teachers have violated the provisions of the PERA by striking, and those determinations are sustained on review, if MERC orders reinstatement of striking teachers because it determines that this affirmative action will best 'effectuate the policies of the act' and that determination is sustained on review, the teacher shall be reinstated." 393 Mich at 641.

The *Rockwell* court went on to state that cases in which reinstatement would best effectuate the policy of the act would be those cases in which the

other discipline imposed, he shall have the right of review to the circuit court having jurisdiction of the parties, within 30 days from such decision, for determination whether such decision is supported by competent, material and substantial evidence on the whole record." MCLA 423.206; MSA 17.455(6).

employer has been found by the MERC to have engaged in an unfair labor practice.

Thus, under the provisions of the PERA, a suit for damages against the collective bargaining representative of striking teachers would clearly have to involve more than merely enforcing the statutory strike prohibition. It would also have to involve the determination of whether the strike, although illegal, was nevertheless justifiable under the circumstances. The *Rockwell* decision indicates that the strike prohibition alone is not conclusive as to the rights of the parties, since some striking teachers, although technically in violation of the prohibition, may not be disciplined or dismissed.[4] Thus, the strike prohibition is but only one element that need be considered in determining the respective rights and duties of the public employer and the public employees. Consequently, it would not only be inconsistent with the policy of the PERA to allow the employer school district to collect damages from the collective bargaining representative merely by showing that a strike has occurred, but it would also be patently unfair to allow such an action in cases where the striking teachers themselves could not be disciplined due to

[4] In fact, it has even been suggested that a strike by public employees may not be illegal, despite the statutory language contained in § 12 of the PERA:

"It might be argued that, as a practical matter, explicit recognition of the right to strike is not necessary for that right to exist as an element in collective bargaining. Since the strike prohibition means little without enforcement machinery, a legislature can give tacit recognition to the strike power simply by removing punitive sanctions. To some extent, that is now the case in Michigan, where the statutory sanctions have been removed and the availability of injunctive relief has been limited by *Holland* to situations involving violence or irreparable harm." (Footnotes omitted.) 68 Mich L Rev 260, 272 (1969).

While we may not agree entirely with this statement, it does point out the fact that allowing plaintiff to recover simply by showing that a strike has occurred would violate the legislative intent of the act.

the public employer's unfair labor practices. Therefore, any civil damage action, in order to be successful under the provisions of the PERA, would have to include evidence that the plaintiff did not commit unfair labor practices, either by way of the plaintiff's proofs or in response to an affirmative defense or counterclaim. As a result, the trier of fact would have to balance the competing equities on both sides before it could reach a decision on the merits.

However, even if a civil damage action were allowed under these conditions, it would nevertheless cause an irreconcilable conflict with other provisions of the PERA. The PERA gives to MERC and not to the courts the primary responsibility to balance the competing equities when unfair labor practices or other misconduct have been committed by both sides. See *Rockwell, supra,* p 639. Thus, if we permitted the courts to become directly involved in this determination, we would be seriously undercutting the statutory responsibility given to the MERC.

Moreover, not only would such a holding undermine the role of MERC in public labor relations law, but it would also interfere with the entire legislative scheme set forth in the PERA. As noted above, a civil damage action to enforce the strike prohibition would necessarily have to include the determination of whether the employer had committed any unfair labor practices. However:

"Allegations of or defenses premised upon employer misconduct are the exclusive province of the MERC to resolve upon the filing of an unfair labor practice charge." *Rockwell, supra,* pp 640–641.

Thus, the courts would be required to make exactly the same determination in a civil damage

action that the MERC is required to make in an unfair labor practice proceeding. Since the Legislature, by enacting the PERA, has established the unfair labor practice proceeding as the exclusive forum within which to make such a determination, we will not allow the courts to replace MERC in performing this essentially administrative function. Consequently, we hold that plaintiff's civil damage action, being inconsistent with the provisions of the PERA, is impliedly barred thereby and cannot be maintained.

## II.

Plaintiff's present action, although it seeks to recover damages for alleged losses, should be more properly viewed as imposing a punitive sanction against the defendants for their violation of the strike prohibition.[5] Plaintiff's suit, if successful,

[5] "In order to achieve consistent results from the application by a state agency of aids to bargaining, it may be necessary to provide certain sanctions to support those aids. Moreover, in a comprehensive approach, the punitive remedies of the strike prohibition may play an additional role, since use of preventive aids, by itself, may fail to achieve an adequate balance of bargaining power. Success in negotiation often depends upon a mutual desire to avoid a costly strike, and in the public sector, the relative cost of a strike to the parties involved is sometimes highly unequal. For example, a strike by public school teachers which merely delays the fall opening of school represents little or no cost to the teachers, since state laws require a minimum number of school days per year and accordingly teachers will usually receive a full years' salary despite the delayed school opening. When the slight cost to teachers is compared with the record of substantial pay increases won by such delays, the tactic appears quite attractive indeed. That situation is in direct contrast to the one which arises in most private sector strikes, in which strike time represents a direct economic loss to the striking employees. When, as is often the case in the public sector, a strike presents little or no threat of economic loss to the employees, it may be desirable to increase the cost of striking and thereby to encourage settlement. Indeed, in order to achieve an equitable balance of bargaining power, some means of cost-equalization is essential.

"A possible cost-equalization approach is to allow damage suits by the employer against the union. Such an approach, however, far from promoting a balance of bargaining between the parties, would proba-

would have basically the same effect on the defendants as if the PERA itself had provided for the imposition of fines against the union and its agents. The result would be the same—in both cases, the union's funds would be disbursed as a direct consequence of the strike and the amount disbursed would bear direct relationship to the length of the strike.

When viewed in this light, plaintiff's suit seeks to provide a public employer not only with an additional sanction which is not provided for by statute, but also one which we think is contrary to the intent of the PERA.

Prior to the enactment of PERA, Michigan's public employee law was governed by the Hutchinson act.[6] That act not only provided for the automatic dismissal of all striking employees with total loss of pension rights and benefits, but it also provided that any striker subsequently rehired could not receive higher pay for a period of one year, and such employee would remain on probation, without tenure, for a period of two years. Moreover, § 8 of that act made it a misdemeanor, punishable by imprisonment for not more than one year and by a fine of not more than $1,000 for any person not an employee to urge or incite a public employees' strike. The PERA, however, removed all the statutory sanctions of the Hutchinson act and replaced them with only the employer's discretionary right under § 6. In addition, as noted above, the PERA also granted extensive

---

bly only aggravate any existing imbalance. In situations in which the union possesses the preponderance of power, the employer would be unlikely to invoke the damage remedy for fear of exacerbating relations; and when the employer holds the power, the availability of such a further remedy would merely increase his advantage." (Footnotes omitted.) 68 Mich L Rev 260, 292–293 (1969).

[6] 1947 PA 336.

collective bargaining rights to the employees which were absent in the Hutchinson act.

Thus, the Legislature, by adopting the PERA, moved to a great extent away from the punitive approach taken by the Hutchinson act to deter public employee's strikes. Instead, the PERA, by granting collective bargaining rights to the public employee, sought to avoid such strikes by equalizing the bargaining power present at both sides. As a result, the single sanction, which was expressly made discretionary and which included the possibility that even employees so dismissed could be reinstated, can be viewed as an attempt by the Legislature to insure that both parties would bargain in good faith. Thus, if the employees were not bargaining in good faith and went on strike, then the act provides that they could be dismissed and not be subsequently reinstated. On the other hand, if it was the employer who was not bargaining in good faith, then, even if the employees went on strike and were dismissed as a result, they could be reinstated in their former positions.

In the present case, the plaintiff could have employed the single sanction provided for by statute, but failed to do so. Instead, plaintiff brought the instant action, which seeks damages based solely on the fact that the employees represented by the defendants went on strike. As such, plaintiff's remedy could very well penalize the defendants where there had been no lack of good faith bargaining on their part. Such a result would not only mark a return to the discarded and unworkable[7] punitive sanctions present under the Hutchinson act but would also be at odds with the legislative intent behind the PERA to equalize bargaining power and to provide penalties only in cases

---

[7] *See* 67 Mich L Rev 891, 910–914 (1969).

where a party has bargained in bad faith. For these reasons, we conclude that plaintiff's present action is not maintainable.

Moreover, we further conclude that the Legislature, by enacting only the § 6 sanction, intended for it to be the exclusive legal[8] remedy in cases where the act had been violated.

Other sanctions, like the one advanced by the plaintiff, could have been incorporated into the PERA at the time of its enactment. The Legislature also could have imposed fines against either the employees or their unions, dues checkoffs, loss of representation, punishment of union leaders, or unfair labor practice proceedings against the unions, as possible sanctions for violation of the strike prohibition or to encourage good-faith bargaining. Instead, the Legislature enacted only the § 6 remedy. This decision on the part of the Legislature, to adopt only one sanction, evidences not only a rejection of the sanctions present in the Hutchinson act, but also a rejection of all other sanctions which could have been incorporated into the act. Consequently, plaintiff's present action, if allowed, would result in the imposition of a judicially created sanction, which the Legislature never intended. This would be inappropriate for two reasons. First, we think that the imposition of any sanctions for violation of the strike prohibition and the establishment of any enforcement machinery necessary thereto is strictly a matter for legislative and not judicial determination.[9] Secondly,

---

[8] This statutory remedy does not limit the availability of the equitable remedy of injunctive relief to stop a strike by public employees when appropriate. *Holland School Dist v Holland Education Assoc,* 380 Mich 314; 157 NW2d 206 (1968).

[9] Const 1963, art 4, § 48 provides:

"The legislature may enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service."

the Legislature is in a better position to decide what remedies would best fulfill the purposes of legislation they have enacted and to determine what penalties should be available for violations thereof. As a result, we will not amend the PERA to provide for any additional sanctions or enforcement machinery to enforce its provisions.

Furthermore, if we were to allow plaintiff's present action against the union, we can perceive no barrier which would disallow the same type of action against the employees, either individually or collectively. Nor can we perceive any barrier which would disallow civil damage suits by employees or their unions against employers as a result of the employers' unfair labor practices. We will not allow such a denigration of the Legislature's policy regarding labor relations in public employment.

### III.

The fundamental purpose for prohibiting public employee strikes has been said to be to insure that the public business is not interrupted and that essential services are not suspended.

"To hold otherwise would result in public agencies being powerless to render public service and to effectively administer public affairs; and the public would thereby be deprived of its right to efficient government. For example, if the members of a fire department or a police department collectively refuse to continue to serve [us] except upon conditions insisted upon by them unless their employer supinely yielded, the public which by taxation pays therefor, would be deprived of fire or of police protection; and the right or power to exercise essential governmental affairs nullified." *Detroit v Division 26 of Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America,* 332 Mich 237, 248; 51 NW2d 228 (1952).

Thus, since the purpose of strike prohibition is to insure continuation of services to the public, we can not see how that purpose can legitimately be construed to protect public schools from any loss of revenue occasioned by a past teachers' strike.[10] Therefore, plaintiff's argument that the statute does not provide it with an adequate remedy for the damages which it suffered can simply be answered by saying that the statute was never intended to protect the plaintiff from such damages. In this context, the following language of the Supreme Court in *Rockwell* is relevant:

"It has been said that there is not a judicial remedy for every wrong or shortcoming in society or in a statutory scheme. The Legislature has left the resolution of collective bargaining impasses in limbo and there the matter shall remain until it chooses to act." *Rockwell, supra,* 646.

For the reasons above stated, we hold that a public employer cannot maintain a civil damage action against the union representing its public employees, where the union has caused the strike in violation of the statutory prohibition.

Affirmed.

[10] In fact, the institution of a civil damage suit may very well lead instead to another strike and thereby cause a further suspension of services.