EASTERN MICHIGAN UNIVERSITY CHAPTER OF THE
AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS v
MORGAN

Docket No. 49245. Submitted June 20, 1980, at Detroit.—Decided
    September 16, 1980. Leave to appeal applied for.

Plaintiff, Eastern Michigan University Chapter of the American
    Association of University Professors (AAUP), sought an order
    in Washtenaw Circuit Court directing defendant, Robert W.
    Morgan, to pay association dues or to make an equivalent
    contribution to the Eastern Michigan University (EMU) schol-
    arship fund as required by the collective bargaining agreement
    governing the terms and conditions of employment of members
    of the bargaining unit. Defendant, although not an association
    member, was a member of the bargaining unit represented by
    the association. The court granted plaintiff's motion for sum-
    mary judgment, Harold E. Van Domelen, J. Defendant appeals,
    contending that he is not contractually bound by the provisions
    negotiated in the collective bargaining agreement between his
    employer, EMU, and his bargaining representative, AAUP. He
    also argued that specific performance is not an appropriate
    remedy to enforce payment of service fees, and he contends
    that enforcement of the payment provision of the bargaining
    agreement interferes with his first amendment rights. *Held:*

    1. The Michigan Public Employment Relations Act confers
    upon an exclusive bargaining representative the authority to
    bind all employees in the bargaining unit to the terms of any
    agreement negotiated on their behalf. Plaintiff, AAUP, is the
    exclusive bargaining agent for employees in the bargaining
    unit to which defendant belongs. Michigan courts recognize
    "agency shop" arrangements whereby an employee is required
    to either join an association or pay his fair share of the
    expenses incurred by the association in collective bargaining
    and administration. Nonunion members are as much parties to
    a bargaining agreement as union members are and have the

REFERENCES FOR POINTS IN HEADNOTES
[1] 48A Am Jur 2d, Labor and Labor Relations § 1794.
[2] 48A Am Jur 2d, Labor and Labor Relations § 1996.
[3] 48 Am Jur 2d, Labor and Labor Relations § 16.

same rights and duties as union members and they cannot be treated differently.

2. The bargaining agreement at issue calls for civil suit as the sanction against nonpaying employees. Discharge could have been provided for in the agreement but was not, and, although discharge is the sanction most often employed to enforce payment of service fees, the law does not require it.

3. Requiring payment of "agency shop" fees as a condition of employment is constitutionally permissible to the extent that such fees are used for collective bargaining purposes. Employees can be compelled to support financially a union which is recognized as their exclusive bargaining agent but they can prevent the union from making political contributions or expressing political views unrelated to the union's duties as bargaining representative. Defendant's constitutional attack is not ripe for adjudication since he has not alleged any illegal expenditures and has not said that he has paid into the scholarship fund, the alternative provided for in the agreement. The issue of whether any part of any dues or fees were paid for any purpose other than those stated in the bargaining agreement requires remand.

Affirmed in part and remanded.

1. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING — POWER TO BIND — SUBORDINATION OF INDIVIDUAL'S RIGHTS.

An exclusive bargaining agent has the power to bind all public employees in the bargaining unit, both union and nonunion, to a collective bargaining agreement, and to act in their interest, regardless of whether the individual employee accepts the agreement, because subordination of the individual employee's rights to the collective interest of the unit is justified by the increased bargaining power which results when employees pool their economic strength and bargain through a representative.

2. SPECIFIC PERFORMANCE — REMEDIES — PAYMENT OF SERVICE FEES.

Specific performance is an appropriate remedy to enforce payment of service fees if so provided in a collective bargaining agreement.

3. LABOR RELATIONS — CONSTITUTIONAL LAW — COLLECTIVE BARGAINING — PAYMENT OF AGENCY SHOP FEES.

Requiring payment of "agency shop" fees as a condition of employment is constitutionally permissible to the extent that such fees are used for collective bargaining purposes; the fees may not be used for political contributions or expression of

political views unrelated to the duties of the bargaining representative.

*Klein & Bloom, P.C.,* (by *Barbara B. Armstrong),* for plaintiffs.

*Morgan & Morgan,* for defendant.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

N. J. KAUFMAN, P.J. The American Association of University Professors (hereinafter AAUP) is party to a collective bargaining agreement with Eastern Michigan University (hereinafter EMU), governing the terms and conditions of employment of members of the bargaining unit. On March 26, 1979, AAUP commenced an action in Washtenaw County Circuit Court for damages and specific performance as a result of defendant Robert W. Morgan's failure to comply with Article VI of the agreement, *infra.* Plaintiff sought an order directing defendant to pay association dues or to make an equivalent contribution to the EMU scholarship fund as required by the agreement. The court, on December 7, 1979, granted plaintiff's motion for summary judgment and denied defendant's motion for summary judgment. It is from this grant that defendant now appeals.

The facts of the instant case are not really in dispute. Briefly, it is uncontested that plaintiff union negotiated a collective bargaining agreement with Eastern Michigan University which in Article VI contained a union security provision, which read as follows:

"During the term of this labor agreement, Faculty

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Members shall either become members of the Association, or pay a fair share of the expense incurred by the Association *due solely to the negotiation and administration of this Agreement* as set forth below, or contribute an equivalent amount to the general scholarship fund of EMU.

*"For those Faculty Members who are not members of the Association, the monthly fee or contribution shall be an amount equivalent to the monthly dues paid by Association members, less any amount paid for membership in the national AAUP and less any amount which may presently or in the future be expended by the Association from membership dues for political purposes, or any other purposes not directly related to the cost of negotiation and administration of the labor agreement; in no event shall the annual fee or contribution be more than .75% of a Faculty Member's base salary less the amounts specified above.*

"EMU and the Association recognize and respect the rights of any Faculty Member to decline becoming a member of the Association or paying a fee to the Association. Any such Faculty Member who so declines may satisfy his or her obligation hereunder by paying the above specified contribution to the general scholarship fund of Eastern Michigan University.

"The Association shall protect and save harmless EMU from any and all claims, demands, suits, or any costs or fees related thereto by reason of the provisions of this section.

"EMU and the Association agree that the terms provided in this section are not subject to the arbitration and grievance procedure. *The parties further agree that the only means for enforcement of the obligations specified herein are by civil action for damages or [other] equitable enforcement.*

"The dues, fees, or contributions provided herein shall be paid on a monthly basis either by payroll deduction or by direct payment to the Association or scholarship fund commencing with the month following the month in which the Faculty Member completes sixty (60) days of service, or the ratification of this

Agreement by both parties, whichever occurs later."
(Emphasis supplied.)

It is further uncontested that defendant is not covered by the Michigan teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* Both parties also agree that said unit is the exclusive representative of EMU professors. Both the plaintiff's and the defendant's motions for summary judgment concerned the interpretation and the legality of the above quoted provisions.

On appeal, defendant first contends that he is not contractually bound by the provisions negotiated in the collective bargaining agreement between his employer, EMU, and his bargaining representative, AAUP. He argues that a contract between the employer and the union creates no obligation upon him.

First, it is important to note that AAUP is recognized as the exclusive bargaining agent for employees in the bargaining unit to which defendant belongs. Section 9 of the public employment relations act (PERA) authorizes employees in the public sector to organize for the purpose of collective bargaining. Section 11 of PERA confers upon the exclusive bargaining representative, in this case AAUP, authority to bind employees in the bargaining unit to the terms of the agreement negotiated on their behalf. Section 9 of PERA provides:

"It shall be lawful for public employees to organize together or to form, join or assist in labor organizations, to engage in lawful concerted activities for the purpose of collective negotiation or bargaining or other mutual aid and protection, or to negotiate or bargain collectively with their public employers through representa-

tives of their own free choice." MCL 423.209; MSA 17.455(9).

Section 11 of PERA provides:

"Representatives designated or selected for purposes of collective bargaining by the majority of the public employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the public employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment or other conditions of employment, and shall be so recognized by the public employer: Provided, That any individual employee at any time may present grievances to his employer and have the grievances adjusted, without intervention of the bargaining representative, if the adjustment is not inconsistent with the terms of a collective bargaining contract or agreement then in effect, provided that the bargaining representative has been given opportunity to be present at such adjustment." MCL 423.211; MSA 17.455(11).

These provisions of PERA are essentially identical to Section 7 and Section 9(a) of the National Labor Relations Act (NLRA). Section 7 provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section [15]8(a)(3)." 29 USCA 157.

Section 9(a) provides:

"Representatives designated or selected for the pur-

poses of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." 29 USCA 159(a).

Recognition of the right of an exclusive bargaining agent to bind all unit employees and to act in their interest is a fundamental principal of Federal labor policy. Subordination of the individual employee's rights to the collective interest of the unit is justified by the increased bargaining power which results when employees pool their economic strength and bargain through a representative. This principle was enunciated by the United States Supreme Court in *NLRB v Allis-Chalmers Mfg Co,* 388 US 175; 87 S Ct 2001; 18 L Ed 2d 1123 (1967).

Michigan courts have generally relied on the construction given Federal statutes to interpret analogous provisions of state law. *Rockwell v Crestwood School Dist Board of Education,* 393 Mich 616; 227 NW2d 736 (1975). Our courts have, in fact, recognized the right of an exclusive bargaining agent in the public sector to provide for an "agency shop" in accordance with the provisions of subsection 10(1)(c) of PERA, MCL 423.210; MSA 17.455(10), *Ball v Detroit,* 84 Mich App 383; 269 NW2d 607 (1978). An arrangement whereby an employee is required to either join the association or pay his fair share of the cost incurred by the association in collective bargaining and administration of the agreement is known as an "agency shop".

Recognizing the validity of agency shop clauses, appellant nevertheless denies the power of the union to create a financial obligation on the part

of a nonunion employee. However, in view of the well-established authority of a bargaining agent to bind all members of the bargaining unit, the significance of defendant's nonunion status is unpersuasive. Nonunion members are as much "parties" to a bargaining agreement as union members, with the same rights and duties. In fact, they *may not* be treated differently. *Vaca v Sipes,* 386 US 171; 87 S Ct 903; 17 L Ed 2d 842 (1967).

The "agency shop" arrangement in the contract in question is specifically authorized by subsection 10(1)(c) of PERA, MCL 423.210; MSA 17.455(10). In 1973, the Michigan Legislature enacted an amendment to § 10 of PERA giving this authorization. This amendment was adopted in response to a decision of the Michigan Supreme Court in *Smigel v Southgate Community School Dist,* 388 Mich 531; 202 NW2d 305 (1972), which held that Michigan law prohibited an "agency shop" in the public sector. Section 10 of PERA, as amended, provides:

"(1) It shall be unlawful for a public employer or an officer or agent of a public employer (a) to interfere with, restrain or coerce public employees in the exercise of their rights guaranteed in section 9; (b) to initiate, create, dominate, contribute to, or interfere with the formation or administration of any labor organization: Provided, That a public employer shall not be prohibited from permitting employees to confer with it during working hours without loss of time or pay; (c) to discriminate in regard to hire, terms or other conditions of employment in order to encourage or discourage membership in a labor organization: Provided further, That nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative as defined in section 11 *to require as a condition of employment* that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of

members of the exclusive bargaining representative; (d) to discriminate against a public employee because he has given testimony or instituted proceedings under this act; or (e) to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11.

"(2) It is the purpose of this amendatory act to reaffirm the continuing public policy of this state that the stability and effectiveness of labor relations in the public sector require, *if such requirement is negotiated with the public employer, that all employees in the bargaining unit shall share fairly in the financial support of their exclusive bargaining representative by paying to the exclusive bargaining representative a service fee which may be equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative.*" (Emphasis added.) (Footnotes omitted.)

This amendment allows for an agreement requiring the payment of service fees by nonunion members in an effort to promote effectiveness of the bargaining unit and to discourage "free riders". See *Detroit Board of Education v Parks,* 98 Mich App 22; 296 NW2d 815 (1980).

Defendant's second argument is that specific performance is not an appropriate remedy to enforce payment of service fees. Section 10 of PERA does not require that an agreement put the nonunion employee on notice that he is subject to discharge if he fails to pay this fee. Although discharge is the sanction most often employed, it is definitely not mandated by the statute. "When a statute provides a beneficial right but no civil remedy for its securance, the common law on its own hook provides a remedy, thus fulfilling law's pledge of no wrong without a remedy." *B F Farnell Co v Monahan,* 377 Mich 552, 555; 141 NW2d 58 (1966). We agree that agency shop fees may be collected from objecting employees by means of a

civil suit. It seems that instituting a civil suit to recover agency shop fees from all objecting employees is a more cumbersome method than discharge, and thus rarely used, but certainly not prohibited. See *Detroit Board of Education v Parks, supra.*

The United States Supreme Court has likewise held that requiring payment of agency shop fees as a condition of employment is constitutionally permissible to the extent that such fees are used for collective bargaining purposes. *Abood v Detroit Board of Education,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977). Defendant takes the words "as a condition of employment" to require the employer to discharge any nonpaying employee, interpreting participation in the "agency shop" as the only condition upon which continued employment may rest.

While § 10 of PERA does approve the requirement of payment of a service fee as "a condition of employment", we prefer to give this terminology a liberal interpretation. We do not construe this language as mandating discharge as the only remedy against one who refuses to pay. If the contract, as in the case before us, provides for a civil suit, such suit, while more cumbersome to the union, is certainly more beneficial to the employee. See *Detroit Board of Education v Parks, supra.* We, therefore, reject the narrow construction defendant has placed upon the statute.

As stated, § 10 of PERA does not mandate any one sanction. This section is, in fact, without its own enforcement mechanism. This is in contrast to the sections on which defendant relies for his argument on exclusivity of remedy. For example, in support of his contention that discharge is the only sanction authorized by PERA, defendant cites

*Lamphere Schools v Lamphere Federation of Teachers,* 67 Mich App 331; 240 NW2d 792 (1976), aff'd 400 Mich 104; 252 NW2d 818 (1977). *Lamphere* arose under § 6, the antistrike provision of PERA. In that case, when an action for damages was instituted by the school district against the collective bargaining representative, the Court of Appeals ruled that the detailed procedures set forth in § 6 for dealing with strikes by public employees evidenced a legislative intent to preclude any sanction other than discharge.

We find *Lamphere* distinguishable from the case in issue on several grounds. First, the Court, in its decision, relied on § 6 of the PERA, in which discharge is the stated sanction against striking teachers. Unlike the involved scheme of § 6, in § 10 the Legislature has not enacted any complicated mechanisms for dealing with an employee's refusal to comply with an "agency shop" clause. Because of this absence of specific sanctions, the contract or collective bargaining agreement is not fettered in providing for one enforcement mechanism or another. It is this freedom to contract which is the second ground on which we find *Lamphere* distinguishable. In addition to the specificity of § 6 of PERA, the contract in question in *Lamphere* provided for discharge as the remedy against striking teachers. The contract in the case at bar calls for civil suit as the sanction against nonpaying employees. The contract could have provided for discharge, see *Detroit Board of Education v Parks, supra,* but it did not. Absent any specific prohibition in § 10 of PERA, this Court feels that the agreement's preference for civil suit is entirely reasonable, and we are loathe to interfere with the plain provisions of the contract.

Another recent case which can be distinguished

from the case at bar is *Detroit Board of Education v Parks, supra.* In this case there was a conflict between the "agency shop" clause and the Michigan teacher tenure act, MCL 38.71 *et seq.;* MSA 15.1971 *et seq.* The tenure act prohibited the discharge of a tenured teacher for noncompliance with an "agency shop" clause. The Court held that discharge of a teacher for noncompliance with the clause was permissible, without regard to the tenure act. Here again, we have two factors not present in our case. First, in *Parks,* we have the tenure act. Defendant Morgan and members of his unit are not covered by such act. Secondly, and again, most importantly, we have in *Parks* a contract which, unlike the contract in question, calls for discharge as a sanction. *Parks, supra,* fn 2. Again, the parties in the case at bar could have contracted for discharge as an exclusive remedy, but they did not. As with *Lamphere, supra,* discharge in *Parks* was pursuant to a provision of the agreement, a provision not included in the contract between AAUP and EMU.

The final matter for our discussion is defendant's contention that enforcement of Article VI of the collective bargaining agreement will interfere with his first amendment rights. In *Abood v Detroit Board of Education, supra,* the Supreme Court of the United States clearly established the bargaining agent's right to collect association dues. The Court did note, however, that compulsory union dues may impact upon employees' constitutional rights. It, therefore, held that while employees may be compelled to financially support the union, which has been recognized as their exclusive bargaining agent, they may prevent the union from making political contributions or expressing political views unrelated to its duties as bargaining representative.

Defendant has not alleged any illegal expenditures, neither has he said he has paid into the scholarship fund, the alternative provided for in the agreement. Therefore, defendant's constitutional attack is probably not ripe for adjudication. However, since Article VI of the agreement provides that no portion of any dues of an employee who is not an association member may be used for political purposes or purposes unrelated to the collective bargaining process, we feel a remand on this issue is appropriate.

In conclusion, we hold that an "agency shop" agreement such as that adopted by AAUP is a lawful union security device, specifically authorized under the Michigan public employees relations act. We further hold that defendant Morgan may be lawfully compelled to live up to the provisions of the agreement through a civil action for damages or specific performance. We do, however, remand to the circuit court on the issue of whether any part of said dues or fees were paid for any purposes other than those stated in the contract. In all other respects, the judgment of the circuit court is affirmed.

Affirmed in part and remanded in accordance with this opinion. This Court does not retain jurisdiction. No costs, neither party having fully prevailed.