DUDKIN v CIVIL SERVICE COMMISSION

Docket No. 63819. Submitted February 8, 1983, at Grand Rapids.—
Decided July 19, 1983.

On April 25, 1980, the Civil Service Commission changed one of
its employment regulations to provide that an agency shop fee
could be imposed pursuant to an agreement with a union. Prior
thereto, adoption of an agency shop fee could only be effected
by a majority vote of the employees involved. Peter Dudkin and
others, employees of the State of Michigan, Department of
Human Services, refused to join the Michigan State Employee's
Association, which had been certified as the exclusive represen-
tative of all Human Services employees. Subsequent thereto, a
contract between the State of Michigan and the union was
ratified by Human Services employees. The contract contained
an agency shop provision requiring all unit members to pay a
fee, regardless of whether they were union members. Dudkin
and the other nonunion employees were informed that failure
to join the union or to pay the agency shop fee could result in
their loss of employment. Letters seeking discharge of such

REFERENCES FOR POINTS IN HEADNOTES

[1] 59 Am Jur 2d, Parties §§ 132, 134, 175.
Construction of Federal Civil Procedure Rule 24(a)(2), as amended
in 1966, insofar as dealing with prerequisites of intervention as
matter of right. 5 ALR Fed 518.

[2, 3] 59 Am Jur 2d, Parties §§ 143, 149, 161.
When representation of applicant's interest by existing parties is
inadequate and applicant is bound by judgment so as to be
entitled to intervention as of right under Federal Rule 24(a)(2)
and similar state statutes or rules. 84 ALR2d 1412.

[4] 59 Am Jur 2d, Parties § 143.

[5] 15A Am Jur 2d, Civil Service §§ 83, 84.

[6] 46 Am Jur 2d, Judgments § 518.

[7] 15A Am Jur 2d, Civil Service §§ 10–12.

[8] 48 Am Jur 2d, Labor and Labor Relations §§ 1074, 1085 *et seq.*

[9] 15A Am Jur 2d, Civil Service § 10.
48 Am Jur 2d, Labor and Labor Relations § 16.
Validity and enforceability of "agency-shop" clause of collective
labor contract—federal cases. 11 L Ed 2d 998.
Validity and construction of "right to work" laws. 92 ALR2d 598.

employees were sent to the employer by the union. Dudkin and the other nonunion employees filed suit against the Civil Service Commission and the union in Kent Circuit Court alleging that the Civil Service Commission failed to follow its own rules and regulations in promulgating a rule permitting negotiation of an agency shop fee with the union. At the time the suit was filed, plaintiffs moved for a temporary restraining order enjoining termination of the plaintiffs for failure to pay the agency shop fee. Taryn S. Bullis and others (petitioners), clerical employees of the State of Michigan not belonging to the Human Services bargaining unit and unrepresented by any union on the date the Civil Service Commission changed its rule requiring a majority vote of the affected employees for adoption of any agency shop fee, filed a motion to intervene. The MSEA became certified as petitioners' exclusive bargaining representative on September 23, 1981. Shortly thereafter petitioners received a letter mailed from the union encouraging the clericals to join the union and stating that an agency shop fee would likely be included in any contract. Petitioner's motion to intervene was denied, George V. Boucher, J., because the petitioners were not threatened with loss of employment since no contract had yet been negotiated and ratified. Therefore, the court reasoned, any injury resulting from an agency shop fee was speculative. The court also denied plaintiff's motion for a temporary restraining order. Subsequently, the court granted defendants' motions for summary judgment finding that plaintiffs and petitioners had no cause of action. Plaintiffs and petitioners appeal. *Held:*

1. The trial court did not abuse its discretion in denying petitioners' motion for intervention. The trial court's basis for denial of intervention was that there was no actual controversy and that petitioners were therefore not entitled to declaratory relief. Petitioners were not subject to an agency shop fee at the time of the trial court hearing, and whether one would be included in their contract was still speculative. The trial court did not abuse its discretion in denying declaratory relief.

2. Plaintiffs' contention that the Civil Service Commisson's revision of the rule requiring a majority vote of the affected employees for adoption of any agency shop fee did not comply with applicable procedural regulations is rejected. The trial court was correct in ruling that commission rules and regulations always contemplated that, once an exclusive representative had been designated, all negotiations over conditions of employment would be only with that union. There is no basis for plaintiffs' contention that they were entitled to receive

individual notice of the proposed change in the rule affecting adoption of any agency shop fee. Furthermore, the commission's action in this case fully complied with its lawfully promulgated rules and regulations.

3. Plaintiffs' contention that the commission's revision of the agency shop rule violated plaintiffs' employment contracts was not addressed by the trial court. Even if plaintiffs had contracts with the State of Michigan, they were subject to the right of the commission to change its rules and regulations. In addition, if an employer notifies its employees that its policies are subject to unilateral change, the employees have no legitimate expectation that any particular policy will remain in force. Finally, state employees have no vested right in the continuation of existing personnel policies and regulations.

4. Plaintiffs' contention that the Michigan Constitution prohibits discharge for failure to pay any agency shop fee because civil service employment is to be governed strictly on merit principles is also rejected. The Civil Service Commission is constitutionally authorized to impose an agency shop fee pursuant to efficient civil service operations.

Affirmed.

1. ACTIONS — INTERVENOR — TRIAL COURT — DISCRETION — COURT RULES.

The determination of whether to allow a party to intervene in an action as of right rests in the sound discretion of the trial court and is governed by court rule (GCR 1963, 209.1).

2. PARTIES — INTERVENTION OF RIGHT — COURT RULES.

All of the following factors must be present in order for an applicant to qualify for intervention as of right: (1) timely application; (2) representation of the applicant's interest by existing parties is or may be inadequate; and (3) the applicant may be bound by a judgment in the action (GCR 1963, 209.1[3]).

3. PARTIES — INTERVENTION OF RIGHT — BOUND BY JUDGMENT.

The mere possibility that a judgment will be binding on an applicant for intervention in an action is sufficient to permit intervention as of right if the other requirements are met (GCR 1963, 209.1[3]).

4. PARTIES — INTERVENTION OF RIGHT — COURT RULES.

There need be no positive showing that existing representation is in fact inadequate before intervention by a party should be permitted; a showing that representation may be inadequate is

sufficient and bad faith need not be claimed (GCR 1963, 209.1[3]).

5. CIVIL SERVICE — VIOLATION OF LAWS — CONSTITUTIONAL LAW.

Any citizen may bring injunctive or mandamus proceedings to restrain violation of the civil service laws (Const 1963, art 11, § 5).

6. ACTIONS — DEFENSES — RES JUDICATA — SAME PARTIES OR PRIVIES.

Res judicata applies only where the first and second actions have involved the same parties or their privies.

7. CIVIL SERVICE — CIVIL SERVICE COMMISSION — PLENARY POWER — CONSTITUTIONAL LAW.

The Civil Service Commission has plenary power over all aspects of civil service employment and is constitutionally empowered to make rules and regulations covering all personnel transactions and conditions of employment (Const 1963, art 11, § 5).

8. MASTER AND SERVANT — EMPLOYMENT POLICIES — UNILATERAL CHANGE OF EMPLOYMENT POLICIES.

Employees can have no legitimate expectation that any particular employment policy will remain in force where the employer has notified them that its policies are subject to unilateral change.

9. CIVIL SERVICE — CIVIL SERVICE COMMISSION — AGENCY SHOP FEES — CONSTITUTIONAL LAW.

The Civil Service Commission is constitutionally authorized to impose an agency shop fee pursuant to efficient civil service operations (Const 1963, art 11, § 5).

*Jeffrey L. Hampel,* for plaintiffs and petitioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Jann Ryan Baugh* and *Michael J. Hodge,* Assistants Attorney General, for Civil Service Commission.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *James R. Davis* and *Iris K. Socolofsky),* for Michigan State Employees Association.

Before: R. M. MAHER, P.J., and R. B. BURNS and
P. J. MARUTIAK,* JJ.

R. B. BURNS, J. Plaintiffs appeal the trial court's
April 7, 1983, order of no cause of action, GCR
1963, 117.2(1).

Plaintiffs are State of Michigan employees, in
the Department of Human Services. On August 28,
1979, the Michigan State Employees Association
(MSEA) was certified as the exclusive representa-
tive of all Human Services employees. Plaintiffs
refused to join the union. In autumn, 1980, a
contract between the State of Michigan and the
union was ratified by Human Services employees.
The contract contained an agency shop provision,
requiring all unit members to pay a fee. Union
members were required to pay $4.50, and nonun-
ion members were required to pay $4.25 every two-
week pay period.

Plaintiffs were informed that failure to join the
MSEA or to pay the reduced agency shop fee for
nonunion members could result in loss of employ-
ment. Letters seeking discharge of such employees
were sent to the employer by the MSEA. This
lawsuit followed.

The crux of plaintiffs' complaint is that the Civil
Service Commission (CSC) failed to follow its own
rules and regulations in promulgating a rule per-
mitting negotiation of an agency shop fee with the
union. Section 7.1 of the CSC Employment Regula-
tions Policy of 1976 provided:

"Section 7. Agency Shop
"7.1 Exclusively represented employees may petition
the Director to conduct an election and *upon majority
vote of the employees in the unit,* the Director shall
require payment via payroll deduction by all employees

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in the unit of a service fee representing the employees' proportionate share of the costs of exclusive representation. Upon certification, by the Director, of the results of an election, under this section, such question shall not again be considered for a period of two years following the date of such certification." (Emphasis added.)

However, on April 25, 1980, the CSC changed rule 7.1 to provide:

"1-701 Representation service fee. Nothing in this policy shall preclude the employer from making an agreement with an exclusive representative to require as a condition of continuing employment, that all employees in the unit pay to the exclusive representative a service fee representing the employees' proportionate share of the costs of exclusive representation."

Plaintiffs contend that § 1-301 of the commission's regulations was not followed. That section provides:

"1-301 Rules changes. The Commission recognizes performance of its legislative (rule making) function in regulating conditions of employment requires a system of notice and consultation for both employees and the employer in the orderly development of changes therein and hereby affirms its intention to use the meet and confer system in the development thereof."

"Meet and confer" is defined by § 1-201(12) as:

"* * * the mutual obligation of employees or their representatives and the employer to meet at reasonable times and confer in good faith concerning terms and conditions of employment."

Section 1-504 of the regulations provides:

"1-504 Limitation. Where an exclusive representative has been designated, unless otherwise prescribed by memorandum of understanding, employees may only be heard on conditions of employment through their exclusive representative."

Plaintiffs contend that the April 25, 1980, revision of § 1-701 was made without notice to them as individuals. At the November 20, 1981, hearing on plaintiffs' motion for preliminary injunction and petitioners' motion for intervention, counsel argued that § 1-301 requires notice of any proposed rule change to be given to each individual employee. Thus, plaintiffs claimed, each individual employee of the bargaining unit was entitled to receive notice that the new § 1-701 dispensed with the "majority vote" requirement for adoption of any agency shop fee, as the 1976 § 1-701 clearly provided.

Petitioners filed a motion to intervene on November 17, 1981. Petitioners are clerical employees who do not belong to the Human Services bargaining unit. They were unrepresented by any union on April 25, 1980, the date of the rule change. On September 23, 1981, however, the MSEA was certified as petitioners' exclusive representative. Petitioners received a letter mailed on September 25, 1981, from the MSEA encouraging the clericals to join the union and stating that an agency shop fee would likely be included in any contract.

Petitioners and plaintiffs have been represented by the same counsel. Petitioners' motion to intervene was denied on December 21, 1981. The trial court denied the motion because petitioners were not threatened with loss of employment because no contract had yet been negotiated and ratified. Thus, according to the trial court, any injury resulting from an agency shop fee was speculative.

On appeal, plaintiffs and petitioners first claim that the trial court abused its discretion in denying petitioners' motion for intervention.

GCR 1963, 209 governs intervention of right and permissive intervention. The langauge of the court rule indicates that intervention is a matter of discretion with the trial judge. *Eastern Construction Co v Cole,* 52 Mich App 346; 217 NW2d 108 (1974). Under rule 209.1(3), three elements must be present to qualify for intervention of right: timely application, actual or potential inadequacy of representation, and possible binding effect of the judgment. *D'Agostini v City of Roseville,* 396 Mich 185; 240 NW2d 252 (1976); *Karrip v Cannon Twp,* 115 Mich App 726; 321 NW2d 690 (1982). The judgment need not have strict res judicata effect; a possibility that the judgment will be binding is sufficient to permit intervention. *D'Agostini, supra.* Further, the burden necessary to show inadequacy of representation is characterized as "minimal". *Karrip, supra.*

The mere fact that petitioners are represented by the same attorney does not mean that plaintiffs' representation of petitioners' interests is automatically adequate, because differing facts may affect the optional legal arguments available to them. In any event, however, petitioners did not qualify for intervention of right, because their ability to protect their interests was not substantially affected. *D'Agostini, supra,* p 190. Because petitioners were not represented by a union at the time of the rule change, whereas plaintiffs were, the notice requirements may have been different as to them. See §§ 1-212 and 1-504 of the CSC Employment Relations Policy of 1976. Further, petitioners could have brought an original action for injunctive relief challenging the CSC's rule

change. Any citizen may bring injunctive or mandamus proceedings to restrain violation of the civil service laws. Const 1963, art 11, § 5; *Reed v Civil Service Comm,* 301 Mich 137; 3 NW2d 41 (1942). However, the provision does not support an action for declaratory relief. *Calcatera v Civil Service Comm,* 52 Mich App 27; 216 NW2d 613 (1974). Because petitioners are essentially seeking declaratory relief, the cited constitutional provision does not support their intervention in the lawsuit.

Moreover, petitioners' contention that a decision in plaintiffs' suit would be res judicata is erroneous. Res judicata applies only when the first and second actions have involved the same parties or their privies. *Annabel v C J Link Lumber Co,* 115 Mich App 116; 320 NW2d 64 (1982).

For the same reasons, the trial court's denial of permissive intervention was not an abuse of discretion. Because petitioners were not represented on April 25, 1980, the questions of fact and law were not "common". Whether the CSC was required to give individual notice to each of the employees, or rather only to their exclusive representative, was the crucial question in this lawsuit, and is precisely the point on which plaintiffs' and petitioners' situations differ.

However, the basis for the trial court's denial of intervention was GCR 1963, 521.1, governing declaratory relief. The trial court ruled that there was no actual controversy. We conclude that the trial court did not abuse its discretion in denying declaratory relief. *Barry County Probate Court v Michigan Dep't of Social Services,* 114 Mich App 312; 319 NW2d 571 (1982). At the time of the trial court hearing, no contract had been negotiated on behalf of petitioners' bargaining unit. They were therefore not subject to an agency shop fee and

whether one would be included in their contract was still speculative.

Plaintiffs next claim that the CSC's revision of Rule 1-701 of the Employee Relations Policy did not comply with applicable procedural regulations. We disagree.

The trial court ruled that the CSC rules and regulations always contemplated that, once an exclusive representative had been designated, all negotiations over conditions of employment would be only with the union. The trial judge was correct.

Under the 1976 policy, § 1-701 permitted an agency shop fee only upon majority vote of the employees in the bargaining unit. On April 25, 1980, after the MSEA had been certified, that rule was changed. The new rule provided that an agency shop fee could be imposed pursuant to an agreement with the union.

Section 1-301 of the commission's rules stated that the CSC would use the "meet and confer system" in developing, implementing, and changing employee rules and regulations. However, "meet and confer" was defined as the mutual obligation of employees or their representatives and the employer to meet and confer. § 1-201(12). Further, § 1-504 provided that, where an exclusive representative had been designated, all negotiations over conditions of employment would be conducted exclusively with the union. These rules remained unchanged from 1976 to 1980. There simply is no basis for plaintiffs' contention that they were entitled to receive individual notice of the proposed change in § 1-701. Plaintiffs conceded in their complaint that the MSEA was certified as their representative and that the union received notice of the change.

Furthermore, the CSC has plenary power over all aspects of civil service employment. *Viculin v Dep't of Civil Service,* 386 Mich 375; 192 NW2d 449 (1971); *Crider v Michigan,* 110 Mich App 702; 313 NW2d 367 (1981). Const 1963, art 11, § 5 empowers the commission to make rules and regulations covering all personnel transactions and conditions of employment. Although the commission cannot violate its own lawfully promulgated rules and regulations, *DeBeaussaert v Shelby Twp,* 122 Mich App 128; 333 NW2d 22 (1982), its action in this case fully complied with applicable rules.

Plaintiffs next contend that the CSC's revision of Rule 1-701 violated plaintiffs' employment contracts. The trial court did not address the question of an enforceable contract between plaintiffs and the state. One panel of this Court has implicitly recognized that state employees may have individual contracts of employment which cannot be abridged absent procedural due process. *Crider v Michigan, supra.* That panel did not discuss the conditions necessary for a contract to arise. The question is superfluous, because even if there were a contract, it was subject to the right of the CSC to change its rules and regulations.

Under § 1-303 of the 1976 policy, the commission reserved the right to promulgate additional rules and regulations. *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 479; 292 NW2d 880 (1980), held that an employment relations policy handbook may create an enforceable contract of employment whose violation is actionable. However, if an employer notifies its employees that its policies are subject to unilateral change, the employees can have no legitimate expectation that any particular policy will remain in force. *Toussaint, supra,* p 619. Although *Toussaint* involved

private-sector employees, its rationale applies here. Also, courts in other jurisdictions have held that state employees have no vested right in the continuation of existing personnel policies and regulations. See *Miller v California,* 18 Cal 3d 808; 557 P2d 970; 135 Cal Rptr 386 (1977); *Oregon v St Clair,* 10 Or App 106; 498 P2d 809 (1972).

Plaintiffs' final claim is that Const 1963, art 11, § 5 prohibits discharge for failure to pay any agency shop fee because civil service employment is to be governed strictly on merit principles.

Const 1963, art 11, § 5 empowers the commission to

"* * * *determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service,* make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service." (Emphasis added.)

A reasonable reading of the above-quoted provision shows that the commission may determine the qualifications of all "candidates for positions" exclusively on the basis of merit, efficiency, and fitness. In *Reed v Civil Service Comm, supra,* the Supreme Court interpreted the term "candidates for positions" to include those already in the classified service. However, that case involved the changeover from a statutory to a constitutional civil service, and the question arose whether present employees would be required to submit to the constitutionally based civil service examination. *Reed* does not support plaintiffs' contention that no employee may be discharged except for lack of merit.

Designation of an exclusive representative and

imposition of an agency shop fee clearly bears on the efficiency of civil service operations. The commission has reserved the right to promulgate "such additional rules as it may deem necessary to insure the effective and orderly operation of the meet and confer system established by these regulations". The director has general authority to issue other employee relations regulations consistent with the rules. § 1-1301.

Finally, imposition of agency shop fees on nonunion members has been upheld in the public employee context. *Abood v Detroit Bd of Ed,* 431 US 209; 97 S Ct 1782; 52 L Ed 2d 261 (1977); *Eastern Michigan Univ Chapter of Amercian Ass'n of Univ Professors v Morgan,* 100 Mich App 219; 298 NW2d 886 (1980).

We conclude that the Civil Service Commission is constitutionally authorized to impose an agency shop fee pursuant to efficient civil service operations.

Affirmed.