KELLY, J.
(dissenting). I respectfully dissent from the majority’s conclusion that the Civil Service Commission’s “agency fee” rule, Civ Serv R 6-7.2, ex *298 ceeds the bounds of its constitutional authority. Instead, I would hold that Rule 6-7.2 is consistent with the commission’s authority to “regulate all conditions of employment in the classified [civil] service” and to determine “the qualifications of all candidates for positions in the classified service.”[1] Moreover, I would hold that the Legislature cannot abrogate Rule 6-7.2 by enacting 2012 PA 349 because the people of this state have specifically limited the Legislature’s authority to “enact laws providing for the resolution of disputes concerning public employees” to public employees who are not in the classified civil service.[2]1 would therefore reverse the Court of Appeals and hold that 2012 PA 349 does not apply to employees in the classified civil service.
I. THE CIVIL SERVICE COMMISSION’S CONSTITUTIONAL AUTHORITY
Article 11, § 5 of the Michigan Constitution establishes the Civil Service Commission as an executive agency and enumerates the following powers unique to the commission:
The commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service.1[3]1
*299 This provision originated in substantially the same form by a vote of the people in 1940,[4] four years after a report by then Governor Frank Fitzgerald’s study commission condemned “the system of political appointments, promotions, demotions, rewards and punishments” that existed in Michigan as part of the spoils system.[5]
In the 75 years since the people of Michigan created the commission, this Court has consistently held that “[t]he power to make ‘rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service’ is indeed a plenary grant of power.”[6] This power includes the “authority to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance, including the power to prohibit activity during working hours which is found to interfere with satisfactory job performance” and “to regulate and even prohibit off-duty activity which is found to interfere with job performance.”[7]
Given that promulgating rules authorizing collective bargaining is within the scope of the commission’s *300 authority—a claim that the majority does not contest— the Court of Appeals has long held that the commission determines whether employees in the classified civil service may engage in collective bargaining at all:
The constitution of 1963 does not expressly give public employees the right to collectively bargain. ... The commission controls all conditions of employment and is vested with plenary powers in its sphere of authority. . .. Only the Civil Service Commission has the power to provide for grievance procedures because it alone has the power to “regulate all conditions of employment” in the state classified civil service.[8]
In regulating the conditions of employment, the commission has determined as a matter of policy to allow collective bargaining when the employees transfer bargaining authority to their exclusive representative.[9] *301 “Employees may organize, form, assist, join, or refrain from joining labor organizations,”[10] and a majority of votes within a particular employee unit establishes “a labor organization as the exclusive representative of all eligible employees in [the] unit. .. ”[11] The exclusive representative is the sole representative that may bargain with the employer.[12]
As part of its decision to establish collective bargaining, the commission enacted Rule 6-7.2, which allows an employer and an exclusive collective bargaining representative to agree—either as part of a collective bargaining agreement or by separate agreement—to “require, as a condition of continued employment, that each eligible employee in the unit who chooses not to become a member of the exclusive representative shall pay a service fee to the exclusive representative.”[13] Accordingly, under agreements authorized by Rule 6.7-2, while an employee has the option to join or refrain from joining labor organizations,[14] an employee *302 does not have the option both to refrain from joining the labor organization that is his or her exclusive representative and to refuse to pay the service fee. Otherwise, the employee would receive the benefit of the exclusive representative’s mandated services without paying for those services.[15]
As a result, the service fee (or “agency fee”) contemplated in Rule 6-7.2 is designed to pay the exclusive representative for its responsibilities to represent all employees—both members and nonmembers—not only during the collective bargaining process but also while the collective bargaining agreement is in effect. Agency fees cannot, however, encompass any activities outside of that process. To this end, Rule 6-7.3 specifies that the fee “cannot exceed the employee’s proportionate share of the costs of the activities that are necessary to perform its duties as the exclusive representative in dealing with the employer on labor-management issues” and “may include only the costs germane to collective bargaining, contract administration, grievance adjustment, and any other cost necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.”[16] To ensure that agency fees encompass only the designated activities, Rule 6-7.4 details the right of an employee to object to the amount of a fee and the concurrent obligation of the exclusive representative to provide “financial information sufficient to determine how the service fee is calculated.”[17]
*303 While the enactment of 2012 PA 349 illustrates that the policy rationales behind mandatory agency fees are debatable, what is clear to both sides of the policy debate is that agency fees are paid directly to an employee’s exclusive representative, not to the commission, the employer, or any other public entity. By likening the commission’s rule authorizing agency fees to the legislative “power to tax and appropriate” and by claiming that the commission’s agency fee rule attempts to exercise “the power to compel funding for its administrative operational duties from another. . . source,”[18] the majority disregards this essential purpose of agency fees. Contrary to the majority’s claim, agency fees do not amount to a tax or appropriation because, quite simply, they do not fund the commission’s “administrative operational duties” to establish the conditions of employment.[19] Rather, employees pay agency fees directly to their exclusive representative for the costs associated with representation during the collective bargaining process and while a collective bargaining agreement is operable. While the commission has separate operational and regulatory duties that include approving, rejecting, or amending the collective bargaining agreement that arises out of the collective bargaining process,[20] there has been no finding—not even an allegation—that agency fees fund *304 these regulatory efforts.[21]
As stated, this Court has specifically held that the commission’s authority includes the authority “to regulate employment-related activity involving internal matters such as job specifications, compensation, grievance procedures, discipline, collective bargaining and job performance[.]”[22] The agency fee rule is a permissible exercise of the commission’s regulatory authority because the rule regulates the mechanics of an employment-related activity—the collective bargaining process.[23]
The majority’s conclusion upsets this traditional understanding of the scope of the commission’s consti *305 tutional authority to regulate the conditions of employment for employees in the classified state civil service. We do not misunderstand the majority’s argument: the majority itself observes that a ratified collective bargaining agreement does not establish the conditions of employment for classified state employees. That collective bargaining agreement is only the starting point for the commission’s purposes, because it must accept, reject, or modify the agreement during its own internal review process. Only when approved by the commission—using the Legislature’s appropriation— does a collective bargaining agreement actually establish the conditions of employment.[24] The majority’s analysis conflates the collective bargaining negotiation process, which is external to the commission, with the commission’s own process for approving a collective bargaining agreement. In reviewing, and then accepting, rejecting, or modifying the collective bargaining agreement, the commission must still “regulate particularized ‘conditions of employment for the eligible employees in the applicable unit.’ ”[25]
Indeed, in alleging that the commission “foist [s] the administrative costs” of establishing the conditions of employment onto employees, the majority ignores the fact that the employees themselves have chosen, for better or worse, to organize and select an exclusive representative.[26] Similarly, the employees themselves can change a bargaining unit’s exclusive representative—or dispense with the collective bargaining process entirely, if they believe that the costs of *306 agency fees do not warrant further representation.[27] If the employees choose the latter approach, the commission’s rules establish that any existing collective bargaining agreement is “immediately void and the unit members are subject to the rates of compensation and other conditions of employment applicable to other nonexclusively represented employees.”[28] Once that occurs, the employer “shall not deduct dues or service fees from any classified employee . . . except dues and service fees deducted through the pay period in which the decertification is issued.”[29]
That the nature of the commission’s authority to promulgate Rule 6-7.2 is policy-driven and not a quasi-tax or quasi-appropriation is further supported in the legislative history of the Right to Work law itself. From 1973 until 2012, the Legislature explicitly permitted employers of nonclassified public employees to require similar agency fees.[30] Moreover, while 2012 PA 349 *307 purported to ban the imposition of agency fees on most public employees,[31] it exempted this prohibition with regard to “public police or fire department employee [s]” and “state police trooper [s] or sergeant [s].”[32] The Legislature’s policy decision to do so was an exercise of its authority to “enact laws providing for the resolution of disputes concerning public employees” outside of the classified civil service[33] or to “enact laws relative to the . . . conditions of employment,”[34] not its authority to tax or appropriate.[35]
*308 Indeed, the majority’s analysis fails on its own terms. Even assuming (as we do not) the majority’s premise that agency fees are “foisted on” employees, the commission has the explicit authority to “fix rates of compensation for all classes of positions,” subject only to a legislative override for compensation increases.[36] As a result, the commission has the absolute authority to reduce employees’ compensation, and the majority likewise ignores the effect that mandatory agency fees have on reducing a bargaining unit’s compensation.
The majority’s decision is an untested application of state constitutional law that may well yield unintended consequences. If the commission’s rule—merely authorizing, and not requiring, agency fees to appear in collective bargaining agreements—is an unconstitutional appropriation, then what other conditions of employment are subject to invalidation by this Court as improper “appropriations”? Because I prefer a more straightforward application of our Constitution, I dissent from the majority’s conclusion and instead would hold that Rule 6-7.2 is a constitutional exercise of the commission’s authority to regulate the conditions of employment and to determine the qualifications of employees in the classified civil service.
II. LIMITS OF LEGISLATIVE AUTHORITY
By invalidating Rule 6-7.2 as beyond the scope of the commission’s constitutional authority, the majority avoids the issue that divided the Court of Appeals and that was actually presented to this Court: whether the Legislature has the authority to invalidate the policy created by Rule 6-7.2 by enacting a *309 conflicting statute—namely, 2012 PA 349. For the following reasons, I would hold that article 4, § 48 precludes 2012 PA 349 from applying to employees in the state classified civil service and that, instead, Rule 6-7.2 continues to apply to employees in the state classified civil service.[37]
Article 4, § 48 provides the Legislature with the discretionary authority to “enact laws providing for the resolution of disputes concerning public employees, except those in the state classified civil service.” This exception to the legislative power is crucial because it demonstrates that the drafters and ratifiers understood the commission as having the exclusive role in resolving disputes concerning employees in the classified service. Moreover, the Constitutional Convention’s Address to the People specifically indicates that “[t]he state classified civil service is exempted” from Article 4, § 48 “because the constitution has specific provisions in this area,” namely, Article 11, § 5.[38]
As explained earlier, an agency fee is adopted as part of the collective bargaining process and involves an employee’s payment to the exclusive representative in lieu of membership dues. The collective bargaining process, culminating in a collective bargaining agreement, delineates and memorializes how the employer and employee will resolve disputes or grievances, including the role that the exclusive representative has in resolving those disputes or grievances.[39] In other words, agency fees are intended not just to pay for the *310 collective bargaining process that determines employees’ rights, but also to pay for the services rendered by the exclusive representative on behalf of a classified employee in matters such as “the resolution of disputes concerning public employees” that arise under the collective bargaining agreement.[40] As a result, the Legislature’s attempt to abolish the agency fee rule runs afoul of article 4, § 48 to the extent that it seeks to regulate employment relations for a class of individuals who have been expressly exempted from such regulation.
The fact that agency fees are directly paid to the employees’ exclusive representative is crucial to this conclusion because it directly ties those fees to the specific exclusion of legislative authority in Article 4, § 48. If Rule 6-7.2 were to require a payment to an organization that is unaffiliated with the collective bargaining or employee grievance process—whether a charitable organization, a civic organization, or a political organization—then Article 4, § 48 would not prohibit the Legislature’s attempt to ban those payments. But, when the commission’s agency fee rule defines the relationship between an employee and his or her exclusive representative, an attempt by the Legislature to override such a rule is limited by the exclusion of state classified employees from the Legislature’s Article 4, § 48 powers.
III. CONCLUSION
For the reasons stated, I respectfully dissent from the majority’s decision to affirm the judgment of the Court of Appeals on alternative grounds. Instead, I would uphold the authority of the commission to promulgate the agency fee rule, reverse the judgment of *311 the Court of Appeals, and hold that Article 4, § 48 precludes 2012 PA 349 from applying to employees in the state classified civil service.
McCormack and Bernstein, JJ., concurred with Kelly, J.

 Const 1963, art 11, § 5; see also Dudkin v Civil Serv Comm, 127 Mich App 397, 408-409; 339 NW2d 190 (1983).

 Const 1963, art 4, § 48.

 Const 1963, art 11, § 5.

 The provision, as initially enacted, did not refer to “competitive examination and performance,” only “competitive performance.” Const 1908, art 6, § 22. The current language was added during the 1961-1962 Constitutional Convention and ratified by the people as part of the 1963 Constitution.

 Council No 11, AFSCME v Civil Serv Comm, 408 Mich 385, 397; 292 NW2d 442 (1980).

 Id. at 406. This grant of power is mandatory: the commission “shall... regulate all conditions of employment in the classified service.” Const 1963, art 11, § 5 (emphasis added). See State Hwy Comm v Vanderkloot, 392 Mich 159, 180; 220 NW2d 416 (1974) (opinion by WILLIAMS, J.) (“[T]he popular and common understanding of the word ‘shall’ is that it denotes mandatoriness.”).

 Council No 11, 408 Mich at 406-407.

 Welfare Employees Union v Civil Serv Comm, 28 Mich App 343, 352; 184 NW2d 247 (1970) (citations omitted), quoting Const 1963, art 11, § 5. The Court of Appeals has further held that the commission “is not required to extend to state classified employees collective bargaining benefits,” id. at 354, and this is consistent with the majority opinion’s conclusion that the commission may permit collective bargaining, even while the commission maintains substantial discretion to reject or alter collective bargaining agreements. See Civ Serv R 6-10.2 (“The civil service commission may reject or modify, in whole or in part, any provision of a proposed collective bargaining agreement, including a provision previously approved by the commission.”); Civ Serv R 6-3.4 (“A primary or secondary collective bargaining agreement approved by the civil service commission remains in effect between the parties during its approved term, unless otherwise amended by the commission during its term as provided in rules 6-3.5 or 6-3.8(c).”).

 While the commission’s decision to allow collective bargaining is a discretionary policy decision that can be rescinded, see Welfare Employees Union, 28 Mich App at 352, its current policy is consistent with labor policies articulated in 1935 by the federal Wagner Act, which describes collective bargaining as “protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.” 29 USC 151. Collective bargaining further “encouragfes] practices funda *301 mental to the friendly adjustment of... disputes arising out of differences as to wages, hours, or other working conditions, and [restores] equality of bargaining power between employers and employees.” Id.

 Civ Serv R 6-5.1.

 Civ Serv R 6-6.3.

 Civ Serv R 6-5.3(a) (“With respect to proper subjects of bargaining, exclusively represented employees may he represented only through their exclusive representative.”).

 Rule 6-7.2 does not require agency fees; it merely authorizes them. Whether a collective bargaining agreement or other agreement requires employees to pay agency fees is, ultimately, a matter negotiated between the employer and the exclusive representative. If the parties’ agreement to charge an agency fee appears in a collective bargaining agreement that is then ratified by a vote of the employees, the fee may be paid as an automatic deduction from the employee’s paycheck. However, the employer “shall not deduct a service fee unless the employee has filed a prior written authorization or as otherwise authorized in a collective bargaining agreement.” Civ Serv R 6-7.2.

 Civ Serv R 6-5.1 (“Employees may organize, form, assist, join, or refrain from joining labor organizations.”).

 See Eastern Mich Univ Chapter of Amer Ass’n of Univ Professors v Morgan, 100 Mich App 219, 227; 298 NW2d 886 (1980) (describing an agency fee as both “an effort to promote effectiveness of the bargaining unit and to discourage ‘free riders’ ”).

 Civ Serv R 6-7.3.

 Civ Serv R 6-7.4(a). See also Civ Serv R 6-7.6 (“An exclusive *303 representative shall account for and report fees and expenses in such detail as necessary to allow employees to determine the proportionate costs of expenditures necessarily or reasonably incurred for the purposes of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues.”).

 Ante at 290, 293.

 Ante at 293.

 Civ Serv R 6-3.1(b) (“The civil service commission retains the authority to (1) approve, modify, or reject, in whole or in part, a proposed collective bargaining agreement presented to it for review and (2) to *304 impose on the parties and eligible employees a collective bargaining agreement as modified by the commission.”); Civ Serv R 6-3.1(c) (“[T]he commission retains the authority, during the term of a collective bargaining agreement, to modify the agreement without the approval of the parties .. ..”).

 Furthermore, as noted earlier, whether a collective bargaining agreement or other agreement requires employees to pay agency fees is, ultimately, a matter negotiated between the employer and the exclusive representative.

 Council No 11, 408 Mich at 406 (emphasis added). Moreover, I would conclude that Rule 6-7.2 also falls within the commission’s authority to “determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service!.]” Const 1963, art 11, § 5. Rule 6-7.2 bears on the efficiency of civil service operations: by enacting a rule that conditions continued employment either on membership in a union or on payment of an agency fee, the commission has determined that negotiating with a single exclusive representative, rather than employees individually, enhances the efficiency of the classified civil service. Dudkin, 127 Mich App at 408-409. Importantly, this Court has interpreted the term “candidates for positions” to include those already employed in civil service positions, and therefore the criterion of efficiency applies to existing employees, such as those covered by Rule 6-7.2. Reed v Civil Serv Comm, 301 Mich 137, 159; 3 NW2d 41 (1942).

 In the same way, Civ Serv R 6-9.2 regulates the collective bargaining process by requiring the state personnel director to “establish a time frame for the conduct of primary negotiations and impasse resolution.”

 See Civ Serv R 6-2.1(d).

 Ante at 296 n 6, quoting Civ Serv R 6-2.1(d).

 Ante at 296. For this reason, the majority’s comparison to “a panel of consultant labor economists,” ante at 296, is inapt.

 See Civ Serv R 6-6.2.

 Civ Serv R 6-6.3(e)(2). Indeed, if collective bargaining did not exist at all, the commission would simply apply these default rates of compensation and conditions to all classified employees. The collective bargaining process proposes an alternative to those default rates of compensation and conditions of employment, and the commission must review that alternative proposal and accept, reject, or revise using the funds appropriated to it from Article 11, § 5. This review would occur regardless of whether agency fees existed and shows that, while the commission has established a policy to allow collective bargaining, it does not benefit either from the collective bargaining process or from the agency fees that employees pay their exclusive representative.

 Civ Serv R 6-6.3(e)(3).

 Former MCL 423.210(l)(c) was enacted by 1973 PA 25 and stated
[t]hat nothing in this act or in any law of this state shall preclude a public employer from making an agreement with an exclusive bargaining representative ... to require as a condition of employment that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to *307 the amount of dues uniformly required of members of the exclusive bargaining representative!.]
This provision was upheld by the United States Supreme Court against a First Amendment challenge in Abood v Detroit Bd of Ed, 431 US 209; 97 S Ct 1782; 52 L Ed 261 (1977). The pending decision in Friedrichs v California, _ US _; _ S Ct _; _ L Ed 2d _ (Docket No. 14-915), cert gtd June 30, 2015, may affect Abood’s continued viability, although Abood’s holding that the First Amendment does not preclude public employee agency fees remained in effect at the time this case was decided.

 MCL 423.210(3).

 MCL 423.210(4)(a).

 Const 1963, art 4, § 48.

 Const 1963, art 4, § 49.

 Const 1963, art 9, § 1 (taxation); Const 1963, art 4, § 31 (general appropriation bills). Public Act 349 of 2012 is, and the former MCL 423.210(l)(c) was, a part of the public employment relations act (PERA). It was only with the enactment of 2012 PA 53 that the phrase “to make appropriations” was added as one of the purposes of PERA. 1947 PA 336, title, as amended by 2012 PA 53. Notably, though, 2012 PA 53 contained an explicit appropriation of $100,000 to implement a requirement that, by March 1 of every year, “each exclusive bargaining representative that represents public employees in this state shall file with the commission an independent audit of all expenditures attributed to the costs of collective bargaining, contract administration, and grievance adjustment during the prior calendar year.” Similarly, 2012 PA 349, to prohibit agency fees in most circumstances, the Legislature explicitly appropriated $1 million to the Department of Licensing and Regulatory Affairs. See MCL 423.210(7).

 Const 1963, art 11, § 5.

 That the majority does not examine this issue at all further emphasizes the fact that they resolved this case on the basis of issues that were outside the issues that were actually briefed and argued.

 2 Official Record, Constitutional Convention 1961, p 3377.

 See Civ Serv R 6-5.3(b) (“With respect to grievances brought under the provisions of the collective bargaining agreement, an employee may be represented only by the exclusive representative.”).

 Const 1963, art 4, § 48.